DAWKINS, J.
Defendant appeals from a judgment in plaintiff’s favor upon an action for the death of the latter’s father alleged to have been caused through the fault of defendant.
Plaintiff answers the appeal, and asks that the sum allowed be increased to the amount originally demanded.
Opinion.
■ Plaintiff’s said father, John M. Churchill (called “Sam” Churchill), and one V. B. Hay-slip, on the afternoon of July 12, 1920, between 3 and 4 o’clock started for a pleasure ride from the city of Alexandria in a direction which led to what was called Seip’s spur, or crossing. The automobile in which they were riding belonged to Hayslip, and deceased, as an invited guest, was sitting on the right side of the front seat. The road upon which they were traveling crossed the railroad track of defendant practically at right angles, was graveled, and the car was traveling at a rate of speed of between 12 and 15 miles per hour. On the right, as they approached the crossing, a view of the track was entirely obstructed by a field of green corn until the machine reached a distance of about 50 feet oil the track. Hayslip continued to drive at the same rate of speed until they were nearly upon the crossing, when Churchill, discovering the train approaching from his right, called to Hayslip to “look out.”’ The latter, having seen the train about the same time, says that he thinks he speeded up a little in the hope of getting across before being struck, but the pilot of the locomotive struck the front of the car about where' Churchill was sitting. The train was running between 25 and 30 miles per hour, the automobile was thrown several feet from the crossing, turned upside down, its occupants were knocked clear of it, and fell some distance beyond the machine. Churchill was knocked unconscious, and died some two or three hours afterwards, while I-Iayslip was injured, subsequently recovered, and testified on the trial of this case.
The first knowledge the engineer, who was sitting on the opposite side of his engine from which the automobile came, had of its approach was an excited alarm given by the fireman just about the time of the collision. The engineer’s view was obstructed by the boiler of the locomotive, and the fireman had been engaged with other duties until an instant before, when he climbed upon his seat in the cab of the engine and discovered the peril of the automobile.
*729 Defendant’s Negligence.
The negligence charged to defendant, was that the train was traveling at an excessive ' rate of speed, and no warning of its approach was given. The first ground, i. e., excessive speed, was not sustained; for the rate allowed by the regulations of the company was as much as 40 miles per hour, and the train was not proceeding at over 30, and in the locality and circumstances we do not think this was excessive.
However, as to the giving of the warning of its approach, we conclude, without finding it necessary to review the voluminous record on the point, that the evidence clearly preponderates in favor of the contention of plaintiff, that is that the signals, ringing the bell, and blowing the whistle were not given, as required by the circumstances of this case; and that defendant was guilty of negligence in this respect.
[1,2] Granting that Hayslip, the driver of the automobile, was guilty of negligence in approaching the crossing without slackening his speed, and attempting to beat the train across, should this defeat plaintiff’s right to recover for the death of his father, who was the guest of Hayslip? Under the jurisprudence of this court, it would not, unless the circumstances were such that the deceased could be charged with negligence of his own. Daull v. New Orleans Railway & Light Co., 147 La. 1012, 86 South. 477, and authorities therein cited. Churchill,'not, having charge of the operation of the machine, was not required to keep a lookout for danger, but could rely upon the discharge of that duty by the driver, who was responsible for its operation; and it not appearing that the deceased saw the approaching train until almost the instant of the collision, and, having shouted the warning as soon as it was discovered, we do not find that he was guilty of negligence.
The Quantum of Damages.
[3] The deceased, as above stated, never regained consciousness after being struck, and there was therefore no survival of a claim for sufferng. However, the relationship of plaintiff and his father, and their associations had been very close and intimate up to the time of the son’s marriage some 15 months before the father’s death. Even after the marriage, deceased (who was a locomotive engineer, with no other children, having been divorced from plaintiff’s mother roany years before) visited his son some four times at his home in Port Arthur, Tex., had given him various sums of money, at one time more than $500 to apply on the purchase of a home, and they had maintained a regular correspondence after being separated.
Taking into consideration all of the circumstances, we think the judgment of the lower court allowing the son $4,000 damages and $464 funeral expenses does substantial justice between the parties.
For the reasons assigned the judgment appealed from is affirmed, at appellant’s cost.