(138 So. 871)

**LORANCE v. SMITH et al.**

**GRANTHAM v. SAME.**

Nos. 31297, 31298.

Nov. 30, 1931.

Rehearing Denied Jan. 4, 1932.

Harvey E. Ellis and Frank B. Ellis, both of Covington, for applicants.

Lewis L. Morgan and J. Monroe Simmons, both of Covington, for appellants Mr. and Mrs. W. R. Smith and Randolph Morgan.

Benj. M. Miller and Fred J. Heintz, both of Covington, for appellee R. J. Kendall.

ODOM, J.

These are damage suits growing out of injuries sustained in an automobile collision which took place January 19, 1929, on the public highway which runs from Covington to Mandeville, La., between a Ford coupé belonging to Mr. and Mrs. W. R. Smith, and a Chevrolet car owned and driven by R. J. Kendall.

During the late afternoon on January 19, 1929, Walter Smith, Clark Morgan, Alphonsine Lorance, and Mrs. Adelia Menant left Mandeville in St. Tamany parish to go to Covington to attend a picture show, riding in a Ford coupé, a car with only one seat, all four riding on the seat together, traveling on a graveled highway twenty-four feet wide. While on their way back, about nine o'clock, their car collided on the road with a Chevrolet owned and driven by R. J. Kendall. Alphonsine Lorance was injured, and Mrs. Menant was instantly killed.

The Ford car in which they were riding was owned by W. R. Smith, who had permitted his minor son Walter to use it. At the time of the accident the car was being driven by Clark Morgan, the minor son of Randolph Morgan.

Mrs. Adelia Menant, who was killed, left a minor child about seven years old, who is represented by its grandfather as dative tutor.

Mrs. Jennie Lorance, mother of Alphonsine Lorance, who was fifteen years old, and the dative tutor of Mrs. Menant's child, prosecute

the present suits against the parents of Walter Smith and Clark Morgan and against R. J. Kendall for damages, it being alleged that Alphonsine Lorance and Mrs. Menant were the invited guests in the car of Walter Smith and Clark Morgan, and that their injury and death were due solely to the joint negligence of Smith, Morgan, and Kendall.

The specific acts of negligence charged against the defendants are set out in articles 14, 15, 16, and 17 of Mrs. Lorance's petition, which are identical with those found in the other petitions, said articles being as follows:

"That said Collision and the damages resulting therefrom were due to the gross negligence of Walter Smith, Clark Morgan and R. J. Kendall, in this:

"That Clark Morgan was driving said car at the rate of fifty miles or more per hour at the time of said accident, on a foggy night, going down a decline, entering a dangerous curve which lead to a narrow concrete bridge across Pantchatalawa Creek; that said Ford runabout was built for the accommodation of two persons, whereas there were four persons riding in said runabout, thereby making it impossible, due to the crowded condition of said car, for Clark Morgan to operate said car with safety, particularly at an unlawful rate of speed, on a foggy night.

"XV. That Walter Smith was guilty of gross negligence in inviting three persons as his guests to ride in a Ford runabout built for two and in allowing and consenting to Clark Morgan's driving said car in its crowded condition at an excessive and unlawful rate of speed of fifty or more miles per hour, on a foggy night, and especially down a decline and entering a curve which approached a narrow concrete bridge across Pontchatalawa Creek, and allowing and consenting to said Clark Morgan's continuing said rate of speed without the speed of said car being reduced when another car was seen approaching in the center of the road and coming around a dangerous curve, all of which was in violation of law; that the negligence of Clark Morgan was imputable to Walter Smith.

"XVI. That R. J. Kendall was guilty of negligence in driving around a dangerous curve at a speed of twenty miles an hour, particularly on a foggy night, and in not driving on the right side of the road, particularly when he saw said Ford car approaching from the opposite direction in which he was going, but continuing to drive his car in the center of said road up to the time of the collision, all of which was in violation of law.

"XVII. That due to the manner in which said cars were being operated, as hereinabove set forth, the said Clark Morgan, Walter Smith and R. J. Kendall were each guilty of directly contributing to said accident and the said minor, Alphonsine Lorance was not guilty of contributing in any wise to said accident, which resulted in her injuries."

The defense of Smith and Morgan is, first, that their sons were not guilty of any negligence, but that the collision and resulting injury were due solely to the fault and negligence of Kendall, the driver of the Chevrolet car, and, second, that Miss Lorance and Mrs. Menant were not the invited guests of their sons, but that all four were out on a joy ride with a common purpose; that the ride was a joint enterprise, and that the four were joint adventurers, and therefore if it should be held that their sons were negligent, as alleged, they were the agents of the other two, who cannot recover for that reason. They especially deny plaintiffs' allegation that Miss Lorance and Mrs. Menant were not guilty of contributory negligence.

As to Kendall, his defense is that he was in no way negligent in the handling of his car, and he alleges that the accident and resulting

injury were due solely to the negligence of the driver of the Ford car.

Each of the defendants excepted to the petition of Mrs. Lorance on the ground that she could not, in her own name, bring the suit for her minor child, her husband, from whom she was not divorced, being present and not joining in the suit.

The district court granted judgment for plaintiffs and defendants appealed to the Court of Appeal, First circuit, where the judgment appealed from in favor of Mrs. Lorance was reversed on the technical ground that the suit should have been brought by the father and not by the mother of the minor, and affirmed as to the other plaintiff.

Mrs. Lorance and defendants applied to this court for writs of review, which were granted, and the cases are before us in response to the writs.

Under the view which we take of the cases on the merits, it is unnecessary to discuss the issue raised by Mrs. Lorance in her application for the writ, as the cases are with the defendants for reasons which we shall presently state.

◼ We first take up the question whether Kendall, the driver of the Chevrolet car, was in any way responsible for the collision. The case is before us on the merits, and it is not only within our province, but it is our duty to consider the facts involved as well as the law applicable, and while this court is always reluctant to set aside the verdict of a jury or the judgment of a trial court in civil cases on questions of fact, yet we feel impelled to do so in this case, as our appreciation of the testimony leads us to the conclusion that the judgment against Kendall is manifestly erroneous.

◼ These plaintiffs alleged and proved beyond question that young Morgan, driver of the Ford, was grossly negligent in its operation. He was driving down grade at a speed above fifty miles an hour, a speed greatly in excess of that fixed by law, on a foggy, misty night at a dangerous point on the road, paying but little if any attention to whether he was on his side, in the center, or on the wrong side of the road. The trial judge correctly said in his written opinion:

"The Court is satisfied from all the testimony that the Ford roadster was being driven at all the speed that it could possibly make; these young people in there were out for a good time, and the Court is satisfied that they were paying but little if any attention either to their speed or to their position on the road."

Referring again to the testimony as to the negligence of operators of the Ford, Morgan says he was driving on his right side of the road and had room to pass the other car, but that about the time the two cars met the Kendall car "cut into him." He does not say that Kendall was driving on the wrong side of the road, but that he cut his car suddenly to the left just as the two were meeting, and that if Kendall had not cut his car they would not have collided. Walter Smith gave substantially the same testimony. Young Morgan says also at one time that he does not know how far the Kendall car was from him when he first saw it, and again that it was probably not more than fifty feet away.

We here quote his testimony found on page 98:

"Q. How far off were you when you first saw the Chevrolet or Kendall car? A. I can't just say.

"Q. About how far? A. It happened so quick I don't remember how far it was.

"Q. The road was perfectly straight there, was it? A. Right where the accident happened it was.

"Q. Did you see him before you got to him? A. Just a little distance.

"Q. How far—twenty feet, or how far? A. About fifty feet.

"Q. You think you didn't see him until he was in fifty feet? A. I saw it ahead of us. I didn't pay any attention until it got close. I could see he was in the middle of the road."

He says he then slowed down as much as possible, but could not avoid the collision. The uncontradicted testimony is that the road is straight for more than half a mile there, and, even though it was a foggy night, the headlights of an approaching car could have been seen that distance. Young Morgan does not say he could not see the car before he did, but that he did not pay any attention to it "until it got close," and he says he paid no attention until the car got within fifty feet of him. It may be said that he meant that he was paying no attention to the oncoming car until it got within fifty feet of him; but from all the testimony we conclude, as did the district judge, that not only was he paying no attention to the approaching car, but was also paying no attention to his position on the road.

Kendall says he saw the Ford when it was at least a half mile away. He and Mr. Berkenstock, who was riding on the seat with him, both say that they slowed down to 8 or 10 miles an hour, pulled over to their right side of the road, where their car remained, and, further, that the Ford car was zigzagging on the road. Kendall says that a moment before the collision Berkenstock exclaimed "They are going to hit us, they are headed toward us." Berkenstock says he made some such exclamation. They both say that the left wheels of the Chevrolet were well over to the right of the center of the road.

There is some testimony that there were skid marks or "scars" in the road, which the witnesses assumed were at the place where the collision occurred. Some of these say these marks were on the right-hand side of the road going to Mandeville, which was the Ford's side, which indicated that the Chevrolet was out of its place. About as many others say, on the contrary, that the "scars" were to the right of the center going to Covington, which would indicate that the Ford was on the wrong side. The testimony as to the position of these marks or scars is so conflicting that we can form no conclusion as to where they were.

A man named Dunn testified that he was an eyewitness to the collision, which occurred at night, while he was standing some fifteen feet from the edge of the road. He says he first saw the Chevrolet as it was coming around a curve going toward Covington, and that it was then on its wrong side of the road. Whether Mr. Dunn, being out to one side of the road while the Chevrolet was coming around a slight curve with its headlights burning, which no doubt blinded him to some extent, could tell definitely that it was on its wrong side, seems doubtful. However, conceding that he could, it does not necessarily follow that it was still on its wrong side at the moment of the collision. He does not say that it was. He says it was on its wrong side when he first saw it. Kendall and his companion say they were never on the wrong side. The occupants of the Ford don't know—they were not noticing.

We attach weight to the testimony of Kendall and his companion. They were driving up grade at a moderate rate of speed and saw the Ford, when it was a considerable distance away, approaching down grade at a terrific rate of speed and "jazzing" on the

road. They were alarmed, and the natural thing for the driver to do was to get out of the way if he could, and the only way he could was to get out and keep out of its pathway by getting as close to his edge of the road as safety would permit. That is what Kendall and his witness say they did.

The two boys in the Ford say that the driver of the Chevrolet cut to the left into their car just as the two were meeting. We doubt that for two reasons: First, it would have been the unnatural, unreasonable thing for him to do; and, second, the occupants of the Ford don't know what happened.

We have carefully read the reasons for judgment assigned by the district judge. He does not say that Kendall was on the wrong side of the road, but says "the Court is further satisfied that from the conflicting statements of the occupants of the Kendall car that they were driving at a much greater speed than would be indicated by their testimony." The conflicting statements "of the occupants of the Kendall car" referred to by him do not seem to refer to their reference to their speed or their position on the road, but to their statements to the effect that they did not see a man named Foster at his office in Mandeville about seven o'clock, more than two hours before the accident. Foster said he did see them, and the judge believed him. Whether they did or did not see Foster bears no relevancy to the issue here involved.

The Court of Appeal in 132 So. 810, found that the two cars "met in or near the middle of the road and ran into each other." The organ of the court did not mean to say that the two cars met "head-on" in the middle of the road, for all the testimony shows that the left side of the Ford hit the left front wheel of the Chevrolet—in the language of the street, the cars "side-swiped" each other, after which the Ford ran down the road one hundred and fifty feet, turned completely around, ran back thirty-nine feet and turned over into the ditch and came to rest up-side-down with its front end in the direction from which it had come. Mr. Dunn, who was a few feet away, ran immediately to the car, found it still running, with the exhaust pipe red hot. The left front casing of the Chevrolet was torn from the wheel and rolled into the woods, the car swerved to the left, ran across the road and landed in the ditch.

The Court of Appeal reasoned that, if the Chevrolet had been on its side of the road where Kendall and his witness said it was when it came in contact with the Ford, it would "if not overturned, in all probabilities would have found its way in the ditch, and would not have darted across the road in the opposite direction."

We cannot quite follow the reasoning. The cars did not come together "head-on"; the Ford did not run against the Chevrolet; neither car was knocked by the other, and therefore there was no reason to expect that the Chevrolet would go off the road on its side. The two cars were meeting and ran so close together that the left front wheel of the Chevrolet struck the left side of the Ford with a glance. This threw or jerked the left end of the front axle back, which would cause the car to run at an angle to the left across the road, and that is what it did.

A careful reading of all the testimony has brought us to the conclusion that Kendall was guilty of no negligence.

We now pass to a consideration of the question whether plaintiff may, under the facts of the case and the law applicable, recover against the parents of the young men.

The theory upon which these plaintiffs seek to recover against defendants is that

Alphonsine Lorance and Mrs. Adelia Menant were riding in the car as the invited guests of Walter Smith and Clark Morgan, and were injured through their negligence. They allege and prove beyond question that the car, which belonged to Smith, but which was being driven at the time of the accident by Clark Morgan, was operated in a negligent manner, and that by reason of this negligence plaintiffs were injured. They specifically allege that Alphonsine Lorance and Mrs. Menant were "not guilty of contributing in any wise to said accident," which allegation was denied by defendants.

Defendants denied in their answer that the two women in the car were invited guests, but alleged and now contend that they were joint adventurers with the two boys; that the suggestion of taking the joy ride came, not from the boys, but from the women, who themselves planned the party, and that the four were engaged in a "joint enterprise," and that there was among the four what has been referred to by law-writers "as merely an informal kind of partnership," so that, in carrying out the common plan and purpose, each was the agent of the others, and that the negligence of one was attributable to the others.

We do not think this was a joint enterprise or a joint adventure as that term is used in law, because it does not appear that the occupants of the car had equal rights to control the operation of it. In the case of Lawrason v. Richard, 172 La. 696, 135 So. 29, 31, this court held, to quote from the opinion on rehearing:

"There is no joint adventure in the sense that the occupant of an automobile is equally liable with the driver unless there be also equal right to control the operation of the automobile," citing 42 C. J. 1179, § 957; Berry on Automobiles (6th Ed.) § 644.

In the case of Wagner v. Kloster, 188 Iowa, 174, 175 N. W. 840, 841, the court said:

"Parties cannot be said to be engaged in a joint venture or common enterprise within the meaning of the law unless there be a community of interest in the objects or purposes of the undertaking, *and an equal right in each to direct and govern the movements and conduct of each other with respect thereto.* Each must have some voice and right to be heard in its control or management."

As pertinent to the point here involved, the court said in Robison v. Oregon-Washington Railroad Co., 90 Or. 490, 176 P. 594, 600:

"The ultimate distinguishing characteristic of joint venture * * * is none other than the right, either express or implied, to direct the movement of the vehicle employed in the transportation connected with the venture," —and in Director General of Railroads v. Pence, 135 Va. 329, 116 S. E. 351, it was said that the rule is founded upon the doctrine of principal and agent. 42 C. J. 1179, § 957.

In the case at bar, there was a community of interest or common purpose; the parties all set out to go to a picture show at Covington, several miles away, and the vehicle used to carry out the common purpose was the automobile, which could be operated by only one member of the party. The plan and agreement, however, lacked the essential element to make it a joint adventure or joint enterprise in this: That it was agreed that one member of the party, Clark Morgan, should drive the car, and it is not shown that the others had any authority, express or implied, to control its operation.

While there is some testimony to the effect that Mrs. Menant first suggested that the party go to Covington to a picture show, the testimony as a whole warrants the holding

that the young men invited the women to ride in the car.

The final question is whether these plaintiffs, in view of the conduct of Alphonsine Lorance and Adelia Menant, and all the circumstances connected with the case, can recover against these defendants.

■ The rule which prevails in this state and elsewhere is that one who invites another to ride in his automobile as his guest, or permits another to ride as a gratuitous passenger, owes to his guest or the passenger the same duty that he owes to a stranger, which is to use ordinary care not to injure him in the operation of the car. Such guest or passenger has a right to expect the same security as that enjoyed by the host himself. If the driver of the car, the host, fails to use such care and is negligent in the operation of his car, and his guest or passenger is injured as a result thereof, his guest or passenger may recover of him such damages as are caused by the injury. This is upon the theory that "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it." Civ. Code, art. 2315.

■ The action which a guest or passenger in the vehicle of another has against the host to recover damages for injuries sustained while riding as such is one in tort, and, like all other tort actions, is grounded on fault and negligence, and in actions of this kind the burden is upon the plaintiff to establish the negligence relied upon.

■ The general rule above stated is, however, subject to the well-established qualification that the guest or passenger may himself be guilty of such independent, contributory negligence as to defeat recovery. In view of this exception to the general rule, these plaintiffs cannot recover.

That Alphonsine Lorance and Adelia Menant, the guests in this case, were guilty of independent negligence which contributed proximately to the accident and to their injury and death is manifestly clear. This is made clear by the testimony. But aside from that, plaintiffs' own allegations show that they were guilty of contributory negligence. They allege that "Walter Smith was guilty of gross negligence in inviting three persons as his guests to ride in a Ford runabout built for two and in allowing and consenting to Clark Morgan's driving said car *in its crowded condition* at an excessive and unlawful rate of speed of fifty or more miles per hour, on a foggy night"; and *"that said Ford car was built for the accommodation of only two persons, whereas there were four persons riding in said runabout, thereby making it impossible, due to the crowded condition of said car, for Clark Morgan to operate said car with safety, particularly at an unlawful rate of speed on a foggy night."* (Italics ours.)

We heartily concur with plaintiffs' counsel, who drew these petitions, that it was negligent for Walter Smith to invite and permit four persons to ride in a small car built for the accommodation of only two, especially on a foggy night, and that it was negligent for Clark Morgan to attempt to drive it under such conditions, and also that its crowded condition made it impossible for him to operate it with safety on a foggy night. These allegations need no proof to support them. It is self-evident that the crowding of four grown people into the seat of a small car built to accommodate only two deprives the driver of the free use of both hands and arms, without which he cannot operate it efficiently and with safety.

■ Now let us consider the case from the standpoint of these guests. They had both reached the age of discretion, one being fifteen

years old and the other a woman who had been twice married and was the mother of a child seven years old. They knew, as well as did the young men, that the night was foggy, that the Ford runabout was built for the accommodation of only two, and that for four people to crowd themselves into a seat built for two would make it impossible for the driver to operate the car with safety. They knew this before they entered the car to go to Covington, and they knew it before they got into the car to go home. Yet they consented to ride in the car under those conditions; they were two of the four who crowded into the seat; they themselves helped to create the condition which made it impossible for Clark Morgan to operate the car with safety, helped create the condition which brought about their injury. Now, if it was negligence on the part of the young men to invite the women to ride under those conditions, were not the guests also negligent in accepting the invitation and riding under those conditions? Most assuredly they were.

 Furthermore, these guests were both on the seat with the driver, where they could see as well as he. They were both in position to know and did know that the car was being driven at a reckless and dangerous rate of speed. The Lorance girl says they were going from fifty to sixty miles an hour. When asked about the speed, she said "we were coming home just humming along the road and the next I knew I was in the hospital," and again, "It was really humming, because I drive a car myself and when it's humming like that, it's going fast." She also knew, or was in a position to know, that the car was zigzagging on the road. She knew the hazard of such reckless driving, and yet she admits that she raised no objection or protest and uttered not a word of caution to the driver, notwithstanding she had ample op-

portunity to do so. Her failure to do so was negligence. Mrs. Menant was killed. She, too, was in position to see and to know what was going on, and continued to ride in the car, when she could have, if she had desired, left it. This fact and her consenting to ride in the crowded car under conditions already stated constituted gross, independent negligence on her part.

The accident and resulting injury in this case were due to the negligent and inefficient operation of the car by the driver, and the negligence of these guests contributed proximately thereto.

 A guest or a gratuitous passenger in a motor vehicle cannot recover for injuries due to the negligence of his host if he is aware of and acquiesces in the negligence. He cannot "abandon the exercise of his own faculties and intrust his safety absolutely to the driver, regardless of the imminence of danger, or the visible lack of ordinary care on the part of the driver to avoid all harm. If he fails to use ordinary care, including the exercise of his own senses of sight, hearing and perception, to protect himself under such circumstances, he is guilty of contributory negligence." 42 C. J., 1170, § 948.

 "One who rides as a guest or passenger in the automobile of another gratuitously or for compensation must exercise ordinary care to guard himself against injury from the hazards of the road; whether such passenger or guest has exercised reasonable care for his safety being ordinarily a question for the jury." Blashfield's Cyclopaedia of Automobile Law, Vol. 2, page 1036.

 In the same work, we find it stated that it is the duty of the guest or passenger to warn the driver of the danger which he sees, or which in the exercise of ordinary care he should see, and "a gratuitous guest in an

automobile can not idly sit by, observe clear violations of the law by one operating the automobile at an excessive rate of speed or otherwise, and acquiesce in it, and then hold the driver or owner liable for damages resulting from such violation." Vol. 2, pages 1087–1095.

In the case of Pipes et al. v. Gallman, 173 La. 158, 136 So. 302, the Court of Appeal for the Second Circuit, in 135 So. 690, certified the following facts to this court:

·"The defendant, 24 years old, invited four high school girls, each about 16 years old, to ride in his automobile, two of whom sat on the front seat with the driver and two on the rumble seat behind. He drove along a graveled road at 55 miles per hour, hit loose gravel and upset, injuring all four girls."

The court further stated that the girls "were aware of the excessive speed but made no protest. The excessive speed was the proximate cause of the accident."

The Court of Appeal then propounded the following question to this court:

"Whether the failure of the plaintiffs to protest against the excessive speed of the car was contributory negligence?"

This court answered the question in the affirmative, stating that "the Court of Appeal has itself answered that question, and answered it correctly in Hutchens v. Morgan, 12 La. App. 545, 125 So. 309, wherein it was held that a guest who was aware that the driver was proceeding at an excessive rate of speed and made no protest was guilty of contributory negligence. And this court therein denied a writ of error on March 10th, 1931."

In the case of Lawrason v. Richard, 172 La. 696, 135 So. 29, 31, this court,· on rehearing, affirmed the judgment of the Court of Appeal in favor of the guest against his host. The facts in that case were that the guest was riding in a rumble seat, and, as stated by the organ of the court, "could not, even if he would, have communicated with the driver." The court further stated "that defendant [the host] was driving at an excessive rate of speed over an unknown road on a dark and rainy night, and continued at the reckless speed even though warned by other occupants of the car."

Two of the justices (the writer being one of them) dissented from the final decree rendered in that case, because they were of the opinion that the facts did not warrant the holding that the plaintiff was an invited guest in defendant's car.

The theory underlying the rule or doctrine that an invited guest in an automobile cannot recover damages arising from injuries due to the negligence of his host, where such guest is aware of the danger and makes no protest, is that of assent to and acquiescence in such negligence. Whether the guest assents to or acquiesces in the negligence of his host is a question of fact which must be determined by the court or a jury from the circumstances surrounding the case. Each case must be decided according to the facts found.

Proceeding upon the proposition, which is self-evident, that one cannot be said to give assent to or acquiesce in a condition about which he knows nothing, it must always be first determined, in cases like this, whether the guest was aware, or by the exercise of due care and the use of his natural senses should have been aware, of the negligence of his host. If it be found in a given case that the guest was aware of the negligence which he should reasonably apprehend might result in his injury, or if by the exercise of due care he should have been aware of such negligence, and if he occupied such a position in the car as would enable him to communicate with the

driver, and if sufficient time elapsed after discovering the negligence to enable him to make complaint and he failed to do so, or failed to take any steps whatever, after becoming aware of the negligence, to protect himself, then it may be said that he acquiesced in the negligence of his host and cannot recover. Under this rule, the opportunity of the guest for discovering the negligence, his position in the car, his age, his mental development and physical condition, and his knowledge of what might constitute negligence or a dangerous situation or condition must all be taken into consideration in determining the question of assent or acquiescence.

These plaintiffs invoke the rule, which this court has repeatedly announced, and which seems to prevail in all jurisdictions, that the negligence of the driver of a vehicle cannot be imputed to a guest or passenger. That rule, however, finds no application in a case like this. Here the only negligence involved is that of the driver of the car or the host, and therefore article 2315 of the Civil Code governs.

In the case of Daull v. N. O. Ry. & Lt. Co., 147 La. 1012, 86 So. 477, the court held that the contributory negligence of the driver of an automobile cannot be imputed to the guest having no part in its management, so as to defeat recovery by the guest for a street railway's negligence.

In all the cases where our court has said that the negligence of the driver cannot be imputed to the guest, the negligence of some third party was involved. Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L. R. A. 1917F, 253; Churchill v. Texas & Pac. Ry. Co., 151 La. 726, 92 So. 314; Maritzky v. Shreveport Rys. Co., 144 La. 692, 81 So. 253; Young v. Luria, 154 La. 919, 98 So. 419; Vitale v. Checker Cab Co., 166 La. 527, 117 So. 579, 59 A. L. R. 148.

For the reasons assigned, it is ordered that the judgment of the Court of Appeal be set aside, and further ordered and decreed that the demands of the plaintiffs be rejected, and their suits dismissed at their costs.

O'NIELL, C. J., concurs in the decree, but not in the approval of the ruling in Pipes v. Gallman.