## PROVOSTY v. CHRISTY et al.

### No. 14685.

Court of Appeal of Louisiana. Orleans. Feb. 26, 1934.

Gordon Boswell, of New Orleans, for appellants.

Wm. J. Curren and Edward Rightor, both of New Orleans, for appellee.

JANVIER, Judge.

Francis Nugent Provosty sues Edmund H. Christy and Ocean Accident & Guaranty Corporation, Christy's liability insurance carrier, claiming $9,953.65 for physical injuries and resulting loss of earnings, expenses, et cetera, caused while Provosty was a guest passenger in a Packard coupé automobile owned and driven by Christy and occupied by the two men mentioned and also by a young lady, who was a friend of both.

The automobile was proceeding up Baronne street and, 138 feet after crossing Poydras street, it skidded into a· large motortruck which was stationary and to which was attached a trailer, which trailer was backed into an alleyway with the truck ahead of it extending almost at right angles into Baronne street, and blocking approximately half of the street; the portion blocked being that directly in front of the Packard car of defendant.

Provosty charges that Christy was negligent in failing to perceive the truck in time and in not having his car under such control as would permit of its being stopped before striking the obstructing vehicle. Defendants deny that Christy was negligent in any way, averring that his automobile was being operated at a normal, reasonable speed, and that the accident was unavoidable and resulted from the fact that when Christy perceived the truck ahead and attempted to turn his Packard to the left and to pass around the front end of the truck, his car skidded, or slid along the surface of the street until its right side, after turning, came into contact with the left side of the stationary truck. It is further asserted that, if the said Christy was negligent, Provosty, sitting also on the front seat and having an equal opportunity to perceive the danger, acquiesced in such negligence and was also independently negligent in several particulars:

First, that Christy had been drinking and that Provosty, knowing this, asked Christy to drive him home.

Second, that since Provosty asked Christy to drive him home, Christy, in doing so, was "acting for and on behalf of plaintiff" (Provosty).

Third, that Provosty, by requesting a seat in the car, which to his knowledge was to be occupied by two other persons, and by so crowding the operator, contributed to his negligence.

Fourth, that since Provosty was and is an experienced driver, he should have cautioned Christy if the latter was driving negligently.

In the district court there was judgment for plaintiff against both defendants in the sum of $5,000, and, since the insurance carrier's liability was limited by its policy to that amount, and because the district court felt that plaintiff's injuries and losses required a judgment for a greater amount than $5,000, an additional judgment was rendered against Christy in the sum of $1,896.16.

There is no evidence which tends to show that the occupants of the car were to any ex-

tent intoxicated, so we may at once dismiss that contention. Christy himself testified, "We were not in a state of intoxication in the slightest degree."

It is not necessary to determine whether Christy extended to Provosty the invitation to ride, or whether the latter requested the former to allow him to enter the automobile. In either case the legal relationship is the same and there would be no difference in the resulting liability. See Lorance v. Smith, 173 La. 883, 138 So. 871.

The accident occurred at about half past 1 o'clock in the morning. We are satisfied, as was the district judge, that the street was wet.

Counsel for defendants directs our attention to the fact that plaintiff in his testimony concedes that, as the automobile approached the point at which the brakes were applied, it was being operated by defendant Christy properly and at a reasonable speed, and that the district judge found that after reaching that point at which the brakes were applied there was nothing Christy could have done which would have avoided the crash, and that the skidding which occurred was inevitable. Our attention is at once focused upon two legal principles, each of which is firmly established, and which, according to counsel for defendants, require that we hold that there is no liability here.

The first is that: " * * * A person using a public highway, especially in an incorporated city, has a right to presume and to act upon the presumption, that the way is safe for ordinary travel, even at night, and he is not required to be on the lookout for extraordinary dangers or obstructions to which his attention has not been called." Jacobs v. Jacobs, 141 La. 285, 74 So. 992, 997, L. R. A. 1917F, 253.

See, also, Deichmann v. Gerard et al., 145 So. 30, 32, in which we said: " * * * A person using a modern concrete highway in the open country and driving at so reasonable a speed as 20 or 25 miles an hour is justified in assuming and in acting on the assumption that the way is safe for ordinary travel, even at night."

The second of the legal principles relied on by defendants is that: "It is a well-known physical fact that cars may skid on greasy or slippery roads without fault either on account of the manner of handling the car or on account of its being there." Linden v. Miller, 172 Wis. 20, 177 N. W. 909, 12 A. L. R. 665.

See, also, Siren v. Montague (La. App.) 142 So. 196, 197; Monroe v. D'Aunoy (La. App) 143 So. 716; Barret v. Caddo Transfer & Warehouse Co., 165 La. 1075, 116 So. 563, 564, 58 A. L. R. 261.

In the Barret Case appears the following: "It is settled that the mere fact that an automobile skidded is not evidence of negligence. Berry on Automobiles, § 156; Huddy on Automobiles, § 336; Cyc. on Automobile Law, p. 269."

From these two principles, that a driver may presume that the roadway is safe and unobstructed and that skidding does not of itself prove negligence, flows the contention that there was no negligence here on the part of Christy and, consequently, no liability in defendants.

But, while it is true that there is a presumption that a paved roadway is safe for travel, this does not mean that an automobile driver may rely on that presumption to such an extent as to relieve him from negligence if he fails to see a danger which should have been apparent to a reasonably prudent and observant person. In the Jacobs Case the danger resulted, not from an obstruction which extended above the surface of the roadway and which, therefore, would have been plainly noticeable, but from a drainage canal which extended across the projected line of the roadway and which, in the nighttime, might easily escape the notice of an ordinarily prudent driver.

The same may be said of the danger which caused the accident in the Deichmann Case. There, it is true that the obstruction extended above the surface of the roadway, but it was not in front of the car, and, therefore, was not illuminated by the headlights until they were turned suddenly upon it as the car followed the curve of the road.

In both cases the danger was not manifest and obvious and might easily have escaped the observation of a reasonably careful driver until too late.

Here, however, the obstruction should have been easily seen.

Likewise, the cases in which it has been held that if a car skids negligence is not necessarily proved thereby may, we feel, be distinguished in point of fact from the case now under consideration. In each of the Louisiana cases and, we believe, also in all the other cases in which recovery was denied, the surface of the roadway and the conditions which made it in each case ex-

ceedingly dangerous were not readily apparent. In Monroe v. D'Aunoy, supra, there was nothing to indicate that the center of the roadway was made up of loose gravel and, therefore, we felt that there was no negligence in driving across that portion of the roadway at a speed which would otherwise have been reasonable.

In Siren v. Montague the condition of the surface of the roadway at the end of the bridge constituted "practically a death trap." The driver of the truck did everything possible to avoid the skidding, but: "* * * Notwithstanding every possible precaution, the rear of his truck made a complete half circle, causing it to face in the direction from which it had come * * *."

In the other Louisiana case to which we have referred, Barret v. Caddo Transfer & Warehouse Company, the court held the defendant liable and said: "To operate a heavy truck at a speed of 8 to 10 miles an hour upon a paved street with a sloping grade, and with a surface admittedly slippery, is an act of negligence; but for the driver of a heavy truck to turn from a paved street into an alley at right angles, under such dangerous conditions and at such rate of speed, is nothing short of an act of recklessness. Skidding and loss of control of the machine would be almost certain, and a condition which the truck driver could have reasonably foreseen, as the accident occurred in broad daylight."

The principle set forth in the above-quoted paragraph from the Barret Case is applicable here. The street was wet. Defendant Provosty has proved this himself. The district judge correctly said: "It is a matter of common knowledge that in the contact of rubber and asphalt water serves as a lubricant, and that an automobile driven on a wet asphalt pavement will skid if its speed is checked or its course changed suddenly. That is a fact of experience and observation which any driver must be held to know."

If Christy did not see the stationary truck in time to avoid it, then he was negligent in failing to maintain a proper lookout ahead. If he saw it and miscalculated the distance which would be required for a stop or to turn aside, then he was negligent in not attempting the maneuver sufficiently far away from the truck because he should have known that more than an ordinary distance would be required. It is one thing to be confronted with a sudden emergency, and an entirely different thing to be confronted with a danger which has been open and apparent all the time and which has been merely overlooked because of insufficient attention.

■ It was not contributory negligence on the part of Provosty to fail to warn Christy of the obstruction. Of course, had he seen it when there was yet time to stop and had there been any reason for him to feel that Christy did not see it, then failure to warn would have been negligence on his part. Williams v. Lenfant, 15 La. App. 515, 131 So. 857. But there was no duty in him to keep a careful lookout ahead, and he complied with all that the law requires of him when, having seen the obstruction when the car in which he was riding was yet 60 or more feet away, he cried out a sudden warning to the driver.

■ That there were three persons on the front seat and that plaintiff was one of the three would be of interest if there were any evidence to show that the movements of the operator were in any way hampered, or that this situation made it more difficult for him to see what was ahead of him; but, in the absence of any such evidence, we find that fact of no importance.

The evidence leaves it doubtful as to whether there were lights on the truck, but we deem it unnecessary to determine this question definitely because, in any event, with the street lights burning brightly and with his own headlights turned on, Christy should have seen the obstruction sufficiently far in advance to have permitted of the stopping of his automobile. Raziano v. Trauth, 15 La. App. 650, 131 So. 212. He saw the truck, as a matter of fact, when he was still about 100 feet away. Though in various parts of his testimony he differently estimates the point at which he first saw it, we believe his final conclusion to be that it was about 100 feet ahead of him when it first impressed itself upon his mind. Surely he could have had his car under such control as would have permitted of his stopping it in that distance regardless of the condition of the surface of the street.

But, as we read his testimony as a whole, we reach the conclusion that he did see the truck and that he believed that he could drive to a point very much nearer than 100 feet and then turn aside. In this he was in error, and this error of calculation on his part was the proximate cause of the accident.

■ It is argued that, since Provosty was an experienced driver, he should have known that the speed at which the car was being

driven was greater than it should have been in view of the fact that the street was wet. If the speed of an automobile is manifestly excessive, there is a duty in a guest passenger to protest, and there may well be circumstances in which failure to protest will be held to constitute contributory negligence. Pipes et al. v. Gallman, 173 La. 158, 136 So. 302; Hutchens v. Morgan, 12 La. App. 545, 125 So. 309. See, also, Lorance v. Smith, supra. But there is no duty to protest unless there is time within which a protest may be made. In Timberlake v. Cassidy, 1 La. App. 630, the Court of Appeal for the Second Circuit considered a contention that a guest passenger should have protested and, in holding that there should be a recovery because of her having had no time to protest, said: "It is inferable from the evidence that the intersection was reached, danger seen and automobiles overturned almost simultaneously, that is, so quick that nothing she could have said or done could have averted the collision."

In Pipes v. Gallman, supra, the Supreme Court made the point which we seek to make here: That there is a duty to protest when there is time to do so, but not otherwise. There the court distinguished between Hutchens v. Morgan, supra, and Timberlake v. Cassidy, supra, by saying that: " * * * in the last case it was found that the guest who failed to give warning did not become aware of the danger until too late to avoid it."

The evidence of Christy shows that, though he had been driving at approximately 25 miles per hour, he "slowed down for the intersection of Poydras Street." After he crossed Poydras street, he was only 138 feet from the point at which the impact occurred only a few seconds later. In that short space of time during which he again increased his speed there was no time for a protest by Provosty.

The injuries sustained by Provosty were quite serious, particularly when considered in connection with the fact that he was a very young man and that his prospects of advancement in his business, which prospects were very bright, have been very much lessened by the fact that his injuries are, to some extent, permanent.

Dr. O'Ferrall states that "he had a fracture of the right ulna at the junction of the upper and middle third"; that the ulna is "one of the bones of the forearm"; that "there was a complete dislocation of the head of the radius, which is the other bone of the forearm"; and that the "radio-ulnar ligament; which is the ligament that pulls the two bones together, was evidently entirely torn."

The arm was required to remain in a plaster cast for several weeks. It was found that after considerable treatment with physiotherapy, which is the application of heat and massage, there was still a considerable displacement "at the site of the fractured ulna," and it therefore became necessary to perform what the doctor terms an "open reduction." He describes this operation as follows: "Cutting into the arm surgically, so as to expose the site of the fracture. Then, by means of what are called Carrel screws or pins, we were able to wire the pins together, after having screwed them into the ends of the bone. That was the only way we could maintain complete apposition. He was again put up in a plaster cast, with the arm at about a right angle, the forearm in supination."

Even after this operation the complete use of the arm was not restored and it is evident that the plaintiff never will be able to completely bend his forearm, nor to fully raise the arm. In the district court plaintiff was allowed $6,000 for loss of salary, reduction of earning capacity, and pain and suffering, and he was also awarded $896.15 for expenses occasioned by the accident. These awards seem to us correct.

The judgment appealed from is affirmed, at the cost of appellants.

Affirmed.