**THIBODAUX et ux. v. CULOTTA et al.**
**No. 2060.**

Court of Appeal of Louisiana. First Circuit.
Dec. 20, 1939.

Porteous, Johnson & Humphrey, of New Orleans, for appellants.

Numa Montet, P. D. Martinez, Harvey Peltier, and Hubert A. Lafargue, all of Thibodaux, for appellees.

DORE, Judge.

This is a suit by Alcide Thibodaux, Sr., and his wife to recover damages for the death of their son, Alcide Thibodaux, Jr., in a collision between the Ford coupe automobile of deceased and the trailer of a truck driven by defendant, Salvadore Culotta. The collision occurred on December 20, 1937, at about 6 o'clock P. M., on a gravel road on the east bank of Bayou Lafourche between Lockport and Raceland. Plaintiff's petition alleges that the accident was caused by the negligent driving of Salvadore Culotta; that the said defendant was driving the truck in the middle of the gravel highway and at a high rate of speed, and that the truck trailer was made to sway on decedent's side of the road, striking the Ford coupe automobile of decedent and causing his instant death. Plaintiffs pray for the sum of $10,000 each, or a total of $20,000, as damages for mental suffering and anguish, loss of companionship and loss of partial support, resulting from the death of their son, and the father prays for an additional sum of $40 for funeral expenses incurred. The suit is against the driver of the truck and trailer, Salvadore Culotta, and against the owner thereof and his insurer.

The defendants admit that the accident occurred at the time and place alleged,

and that Alcide Thibodaux, Jr., was killed as a result thereof, and that he was the legitimate son of plaintiffs; but contend that the collision was caused by the sole negligence of the deceased, who they claim left his side of the highway and drove his Ford automobile into the truck trailer. In the alternative, if it should be found that the truck driver was negligent, the defendants contend that the deceased was guilty of contributory negligence, in that he was driving his Ford coupe, suitable for the accommodation of two persons, with six persons therein.

Upon hearing of the case, the lower court rendered judgment in favor of plaintiffs and against the three defendants in solido, in the total sum of $5,040, with interest and costs. The defendants have appealed, maintaining that the lower court erred in finding liability on their part, and praying that the judgment be reversed and plaintiffs' suit dismissed at their cost. The plaintiffs have answered the appeal, contending that the judgment should be increased to the amount originally prayed for.

From a review of the evidence, we find that on December 20, 1937, the deceased left Lockport shortly before 6 P. M. going to his home near Thibodaux in his Ford coupe automobile, traveling north on the gravel highway on the east side of Bayou Lafourche, accompanied by his fiancee, Miss Boudreaux; his sister, Mrs. Leonard; and his three small nephews, James, Jerry and Marion. Alcide Thibodaux, Jr., the deceased, was driving; Miss Boudreaux sat next to him, holding Jerry, 5 years of age, in her lap; Mrs. Leonard sat next to Miss Boudreaux, holding James, a two-year-old child, in her lap; and Marion, 9 years of age, was kneeling on the floor in front of Mrs. Leonard.

It is testified by Mrs. Leonard and Miss Boudreaux that the deceased was driving on his right hand side of the road before and at the time of the accident; that they saw the truck and trailer coming toward them at a rapid rate of speed; that the trailer was swinging in the road and was in the middle of the road, and, as their car passed the truck, the trailer swung out and struck the Ford on the left side; that when the trailer struck the car Alcide Thibodaux, Jr., was instantly killed and his body fell out of the car on his side of the road; that they and the children were taken to a doctor a few

minutes after the accident by Salvadore Culotta, the driver of the truck. They testified that the deceased was driving at the rate of about 25 to 30 miles per hour and that the truck was coming much faster; that they could see the truck approaching for some distance before the collision and that the deceased, who at all times was driving on his right, pulled over further to the right near the ditch as the truck approached and was at his extreme right at the time of contact. They testify further that the truck traveled 200 to 250 feet after striking their car, and that their car stopped on its side of the road near the ditch.

The only two other eye witnesses to the accident, aside from the three small children who were not called as witnesses obviously because of their tender age, were the driver of the truck, Salvadore Culotta, and Sam Johnson, a colored man who was sitting in the seat of the truck by the side of Culotta. These two witnesses testify that the truck was going only 15 to 16 miles per hour, and as the Ford approached the truck slowed down to 13 or 14 miles per hour; that the truck was on its extreme right side of the road, and the Ford was coming in the center of the road and ran into the side of the trailer near its rear end; that after the crash the truck stopped within five or six feet, and was on its right side of the road, near the ditch.

It is obvious that there would not have been a collision if the Ford car was being driven as the two ladies say it was and if the truck was over on its extreme right hand side of the road as these other two witnesses say it was. In this situation, all the surrounding facts and circumstances must be considered in order to determine the real cause of the collision and in order to fix responsibility for the tragic results.

Miss Boudreaux and Mrs. Leonard testified that the deceased was driving at a reasonable rate of speed. They are the only witnesses in a position to know that fact. Moreover, the circumstances in which the deceased found himself—being accompanied by his fiancee, whom he was to marry within a week, and an older sister, and three small nephews, on a trip of only a short distance—were such as to make it reasonable to expect that he would not drive at a reckless speed or in any way but carefully.

While there is some contradiction in the evidence as to the place of contact, the decided preponderance of the evidence shows that the Ford car stopped on its right side of the road immediately after the crash; that the blood spots from the body of the deceased were some little distance from the center of the road on the decedent's side of the road; that the body of deceased was found immediately after the crash only two or three feet from the ditch of his side of a 24 or 25-foot road; that most of the débris from the wreck, broken glass, oil spots, etc., were found on the decedent's side of the road.

It is admitted that the truck trailer was twenty-two feet long and wider than the truck to which it was attached. The defendant truck driver testified that this long, wide trailer could not sway or swing, because it was attached to the truck by a "fifth wheel". However, we have no testimony on that point except the mere statement of the truck driver, and we do have testimony to the effect that the gravel road was rough and bumpy, and the testimony of the two ladies who witnessed the accident to the effect that the trailer was swaying on this rough gravel road. It is not difficult to believe that this large trailer could easily sway a few inches on this rough gravel road going at even a moderate rate of speed.

The testimony of the sister and fiancee of deceased is to the effect that the Ford passed the truck and was sideswiped by the trailer. That testimony is corroborated by the fact that the trailer was wider than the truck, and by the further fact that the pictures of the Ford taken after the collision show that the Ford was completely crushed and demolished on its left side and suffered but little damage on its front. If the Ford had run into the truck, as testified by the truck driver, the front bumper and radiator would have been crushed, or at least damaged to a much greater extent than shown by these pictures.

An examination of the photographs of the road at the point of the accident reveals that the Ford going north was traveling inside of a small curve, and the truck and trailer were rounding the outside of the curve from the opposite direction. In making the gradual turn to the left with a truck and a large trailer, it appears apparent that the trailer will have a tendency to veer somewhat further to the left than the front of the truck. It is also apparent that there is a tendency on the part of a driver negotiating the outside of a curve to pull more to his left than to his right, whereas the driver negotiating the inside of the curve will almost always pull over to his right.

The defendant, Salvadore Culotta, testified that while he was taking the two 'ladies and the children in his truck to the doctor's, he asked the ladies if they knew how the accident happened, and that they and the oldest boy answered that they had run into him and he couldn't help it. The two ladies, however, flatly denied that they had stated to Culotta that they had run into him; but testified that Culotta did bring up the question right after the accident as to whether or not he was to blame, to which they replied that they were not looking for someone to blame but were anxious to secure help. Undoubtedly, Miss Boudreaux and Mrs. Leonard, right after the accident, aside from being badly shaken up and probably suffering from shock, were overcome with grief over the death of young Thibodaux, and with anxiety over the small children who appeared to be injured and whom they desired to take to a doctor as soon as possible. It is not, therefore, difficult to believe that, at the time of the alleged statement to Culotta, their chief concern was to get to the doctor's office. On the other hand, Culotta's admitted anxiety to exculpate himself from blame so soon after the accident, at a time when he must have realized that these people were grief stricken and probably themselves injured and certainly in anything but a normal state of mind, does not bespeak a clear feeling of innocence on his part, but rather indicates a feeling of fault.

The defendants have attempted to discredit Miss Boudreaux and Mrs. Leonard by showing that while they testified that they visited the home of Mr. Perilloux in Lockport on the afternoon of the accident and that neither Mr. Perilloux nor deceased left the house during the afternoon, the testimony of others revealed that Mr. Perilloux and Mr. Thibodaux were seen in town at about four o'clock that afternoon. We do not believe that the fact that these ladies were mistaken on this immaterial point in any way destroys their credibility. It is entirely probable that the two men left the house

for a while during the afternoon without the knowledge of the ladies. Certainly there was nothing to gain for the ladies to have testified that the men were at the house during the entire visit, if they were aware that such was not the case. Evidence was introduced also with reference to a conversation, with reference to the lights of the car, between Emile Toups and Miss Boudreaux; the latter testifying that she never told anyone that there was anything wrong with the lights of decedent's car, and the former stating that he was told by Miss Boudreaux that there was something wrong with the lights. The fact remains that the lights of the car of deceased were burning properly, and it is therefore immaterial to the decision of the case what Miss Boudreaux might have said about the lights to Emile Toups, except in so far as it reflects on her credibility. Since it is admitted that the lights of the Ford were burning properly, it is likely that Mr. Toups merely misunderstood Miss Boudreaux.

■ In any event, the testimony of Miss Boudreaux and Mrs. Leonard, with reference to the material aspects of this case, is amply corroborated by the surrounding facts and circumstances discussed hereinabove. The trial judge, who had the advantage of seeing and hearing the witnesses, concluded that the version of the accident given by these ladies, to the effect and extent that the Ford car of deceased was sideswiped on their side of the road by the trailer of defendant's truck, was correct, and we cannot say that he committed manifest error in reaching such conclusion.

■ The defendants contend that the fact that deceased was driving his small coupe automobile, built, as they say, for the accommodation of only two people, with six persons riding therein, constitutes negligence on his part, and in support of that contention they cite the cases of Lorance v. Smith, 173 La. 883, 138 So. 871, and Herr v. Thames, La.App., 165 So. 530. In each of the cases cited four grown persons were seated in a coupe automobile built for the accommodation of only two. In the former case, it was found that the presence of four grown persons in the car made it impossible for the driver to operate the car with safety on a foggy night, and in the latter case, it was held that the crowding of four grown persons in the coupe automobile obscured the driver's clear vision of vehicles approaching from the right. In the case at bar, the preponderance of the testimony is to the effect that three grown persons could be seated comfortably on the one seat of the automobile. Also, it is testified, and it appears to us apparent, that the presence of the three small children, in their respective positions, did not result in crowding the driver or in any way obstructing the vision of the driver and his adult companions. The defendants contend further that "it is a known fact that young persons will move around in a car and when in a crowded condition will move considerably more than when comfortable". It may be true that children will become restless in an automobile on a long trip, but it cannot be presumed, in the case before us, involving a trip of only a few minutes' duration, that the three small children were squirming or moving around or in any way hampering the operation of the car. The evidence is to the effect that these children, as well as the adults, were comfortably situated in the car and in no way interfered with the operation of the car or obscured the vision of the driver, especially his vision to the left from which side the truck approached him.

■ With reference to the quantum of damages, we realize that it is impossible to compensate the parents fully in dollars and cents for the great mental suffering and heartbreak occasioned by the tragic death of their son, and that any award made must necessarily be an estimate based largely on material needs of the surviving parents and precedents heretofore established. In view of the fact that the plaintiffs are of advanced age, the father being about 72 years old and the mother only a few years younger, and therefore do not have a long life expectancy, and in view of the fact that the contribution of about $15 per month towards their support, which the deceased was giving them, would have ceased, according to their own testimony, probably at the time of his marriage, which was to occur a week after this fatal accident, we feel that the award made by the lower court is reasonable.

In view of the foregoing considerations, we are of the opinion that there is no manifest error in the conclusions of the trial court with reference to the facts in this case, and the judgment is therefore affirmed.