HERGET, Judge.
From a judgment rejecting Plaintiffs demands and dismissing her suit against Canal Insurance Company, the liability insurer of Emmett W. Gambrell, for the alleged wrongful death of her son, William Gillespi, plaintiff, Mrs. Ollie Thomas Carter, prosecutes this appeal.
Plaintiff’s cause of action as to Defendant is predicated upon the alleged negligence of Gambrell in backing his truck out into a through highway; in failing to keep a proper lookout; in failing to have his vehicle under control; and in failing to yield the right of way to Leroy Weeks, traveling on a through highway, the driver of the car in which decedent was riding. Defendant entered three defenses to the suit. (1) William Gillespi, the deceased son of Plaintiff, was an illegitimate child and, accordingly, Plaintiff has no right of action for his death; (2) Gambrell was not negligent in entering the highway; and (3) if Gambrell were negligent in causing the collision, the deceased knowingly assumed the risk of danger, thereby barring Plaintiff’s right to recover for his death.
The Trial Judge in written reasons concluded the deceased assumed the risk in voluntarily riding with Leroy Weeks knowing he was going to operate the vehicle at a reckless rate of speed, 120 miles per hour. The Trial Court further concluded the insured, Mr. Gambrell, was guilty of no negligence in the causation of the death of Gillespi but the sole proximate cause thereof was the reckless speed of Weeks in the operation of his vehicle.
Plaintiff and Tom Thomas were married on October 13, 1921, as evidenced by a marriage certificate introduced in the case. Thomas left Plaintiff and moved to California in 1923. In 1934 when the deceased, William Gillespi, was born, Plaintiff was living with William Gillespi. The birth certificate of the decedent, also introduced in evidence, reveals the decedent’s father is William (Glasper) Gillespi. Despite this circumstance, the evidence reveals Plaintiff and Tom Thomas were never divorced. Accordingly, as the husband or his heirs never attacked the legitimacy of the deceased, the deceased is conclusively presumed to be the legitimate child of Plaintiff and Tom Thomas. Consequently, Plaintiff has a right of action for the death of her son. Jenkins v. Aetna Casualty & Surety Co., La.App., 158 So. 217.
The evidence reveals, without contradiction, Leroy Weeks, the owner of a Ford Thunderbird, in conversation with Robert L. Bell and the deceased, William Gillespi, maintained the vehicle was capable of attaining a speed of 120 miles per hour. Pie invited the deceased to drive the vehicle to prove such fact to himself. With decedent operating the vehicle the parties drove northerly from Sicily Island in Catahoula Parish, Louisiana to a place of business known as “Two Mile Inn”, a distance of eight miles, for the purpose of testing the speed of the automobile. Decedent was successful in attaining a speed of only 110 miles per hour. Upon stopping at the Inn the parties consumed some intoxicating beverages. Subsequently they re-entered the vehicle for the avowed purpose of permitting Leroy Weeks to demonstrate his *478 capability of attaining 120 miles per hour speed in the vehicle. The deceased and Bell voluntarily accompanied Weeks on what proved to be the fatal trip for Gillespi and they not only accompanied Weeks but encouraged him to demonstrate his ability to attain the goal of reaching this grossly excessive speed of 120 miles per hour. In the run Weeks did, in fact, accomplish this task; however, after passing a vehicle, (traveling in the same direction Weeks was driving) shortly thereafter, the Gambrell truck was observed entering the highway, either backing therein or going forward. Weeks was unable to avoid colliding with the Gambrell vehicle. After striking same the Weeks car veered to the left, literally flew through the air a distance of 178 feet, then struck a telephone post with such force it was broken in three places. Gillespi was thrown from the car and died immediately. The evidence further reveals that Weeks, prior to striking the Gambrell truck, applied the brakes and caused his vehicle to slide but because of the speed at which he was traveling, either he lost control of the car before striking the Gambrell truck or because of such speed, he was unable to avoid the collision.
The law of contributory negligence is aptly stated in White v. State Farm Mut. Auto. Ins. Co., 222 La. 994, 64 So.2d 245, wherein, at page 249 of 64 So.2d, Justice McCaleb as the organ of the Supreme Court said:
“Contributory negligence is, as the phrase signifies, negligence which contributes to the accident, that is, negligence having causal connection with it and but for which the accident would not have occurred. Insofar as the rights of a guest in an automobile are concerned, it is settled that, in actions against third persons, the negligence of the host driver does not bar recovery because his negligence cannot be imputed to the guest. Lawrason v. Richard, 172 La. 696, 135 So. 29; Lorance v. Smith, 173 La. 883, 138 So. 871. However, a guest may be denied recovery on the ground of contributory negligence in instances where he is guilty on his own part of independent negligence of such a nature, that, but for which, his injuries would not have been sustained. Lorance v. Smith, supra; Churchill v. Texas & Pac. Ry. Co., 151 La. 726, 92 So. 314; Delaune v. Breaux, 174 La. 43, 139 So. 753; Squyres v. Baldwin, 191 La. 249, 185 So. 14. But in determining whether the asserted fault of a guest has been a contributing factor in bringing about his injuries, it is first necessary to ascertain what duties are imposed upon him as pertain to the operation of the vehicle and the safety of the journey. It is firmly established by the above cited authorities of this Court and others of the Courts of Appeal of this State, too numerous to mention, that a guest is under no duty to supervise the driving of the vehicle and he is not obliged to look out for sudden or unexpected dangers that may arise. Albeit, he has the right to place reliance upon the driver to discharge that obligation and, as aptly expressed by the Court of Appeal, Second Circuit, in Singley v. Thomas, 49 So.2d 465, 469, ‘ * * * is not required to monitor the operation or to pay attention to the road and other traffic conditions’ in the absence of a showing that he has actual or constructive knowledge that the driver is incompetent or unfit to operate the vehicle.
“On the other hand, the jurisprudence has imposed upon the guest an obligation to avoid an accident or injury to himself under certain conditions. That duty has been tersely said by this Court, in Delaune v. Breaux, supra, to exist in cases where the guest ‘ * * * is aware of the fact that there is danger ahead, which apparently is unknown to the driver or may be unknown to him, or where a sudden or unexpected danger arises to the knowledge of the guest, apparently not observed by the, driver * * 174 La. *479 at page 47, 139 So. at page 755. In such situations, it is incumbent on the guest to warn the driver of the danger and, if he fails to do so at a time when the driver is able to avert it, his dereliction may he said to be a contributing cause of any injury he may sustain.
“In addition to these instances of contributory negligence, recovery of a guest may be refused when he has knowingly assumed a particular risk, such as riding with an intoxicated driver or one otherwise incompetent. This doctrine of assumption of risk has sometimes been applied indiscriminately by the courts as contributory negligence. James, Assumption of Risk, 61 Yale L. J. 141 (1952). Be this as it may, discussion of the doctrine is unimportant in this case for reasons to which we shall hereinafter advert.”
Learned counsel for Plaintiff, in view of the decision of Constantin v. Bankers Fire and Marine Insurance Company, La.App., 129 So.2d 269, concedes the deceased assumed the risk insofar as the negligence of the operation of the vehicle by Weeks was concerned, in that Gillespi voluntarily, by accompanying Weeks, placed himself in a hazardous or dangerous position inconsistent with his safety with full knowledge or appreciation of the hazard and not only did he acquiesce in the dangerous maneuver but affirmatively encouraged such act by Weeks. However, counsel for Plaintiff maintains such assumption of risk insofar as the operation of the vehicle by Weeks was concerned does not thereby bar the right of Plaintiff to recover against Defendant herein because of the alleged negligence of its insured, Gambrell. In support of such contention, counsel for Plaintiff relies upon the cases of White v. State Farm Mutual Automobile Insurance Company, supra, and Lofton v. Cottingham, La. App., 172 So. 377. We note in the White case the Court affirmatively found that the speed of the pickup truck in which plaintiff was a guest passenger had nothing whatever to do with the accident which subsequently occurred. In the Lofton case supra, the Court concluded defendant was negligent in leaving a place of safety and proceeding into the intersection where an accident occurred with knowledge such maneuver could not, in all probability, be made in safety and his negligence in so driving was a proximate cause of the accident and despite the contributory negligence on the part of the driver of the vehicle in which the plaintiff in that case was riding, defendant’s acts of such negligence would render defendant solidarily liable to the plaintiff for damages sustained by him.
 We find no negligence on the part of Gambrell. Prior to the accident he had parked his vehicle on the west shoulder of the highway or a lane leading westerly therefrom (the highway traversing a northerly-southerly route) for the purpose of driving back into the pasture one of his cows straying on the highway. Having succeeded in such endeavor, with the lights burning on his truck, Gambrell either drove forward or backed across Highway 15 for the purpose of entering a private lane leading to his home some thirty yards north of the point of collision. Witnesses for Plaintiff who were accompanying Weeks on the fatal drive deposed that Gambrell backed across the highway into their path. Gam-brell himself, in the course of his deposition, at times related he backed his truck across the highway and at other times stated the reverse in the movement of his vehicle. However, he specifically testified he had parked his truck on the west side of the highway with the front of his car facing easterly and with the lights burning as an aid to observe the action of the escaped cow. He further related prior to his making entry into the highway he made observation of traffic thereon and seeing only the lights of a vehicle one quarter of a mile north of the point where he was stopped, believing he had ample time in which to traverse the highway, he proceeded to cross same; however, the Weeks vehicle traveling south on the highway at a highly excessive rate of *480 speed which has been shown to be 120 miles per hour passed the vehicle Gambrell had observed and Gambrell could do nothing to avoid the collision of the Weeks car with his vehicle. Through no fault of his own but because of the excessive speed of the Weeks vehicle, Gambrell was placed in the position — so to speak — of a “sitting duck”. The setting for this tragedy is in no way attributable to the negligence of Gambrell but resulted solely because of the gross negligence of Weeks in driving his vehicle on a public highway at such unconscionable speed. Whether Gambrell hacked his vehicle across the highway or drove forward across same, he was guilty of no negligence in such maneuver for in all sound reasoning a motorist is under no duty to anticipate the approach of a vehicle on the highway traveling 120 miles per hour. The accident occurred at 8 o’clock at night, a dark night, and Gambrell had no knowledge, nor, because of lack of visibility, could he have acquired such knowledge by observation at the time he entered the highway of the grossly excessive speed at which Weeks was driving. Perhaps the best evidence of the fact Gambrell did not make a sudden unsafe entry into the highway, but to the contrary his entry was normal, is that the vehicle Gambrell observed a quarter of a mile north distant from the point of collision, which automobile Weeks passed, was in no way involved in the accident and the driver thereof arrived at the scene of the accident and stopped his vehicle without mishap moments after the fatal collision.
At the time Gambrell entered the highway there was nothing to indicate to him as a reasonably prudent driver the maneuver he was attempting could not be done in safety. On the other hand, Weeks, the driver of the other vehicle involved, and his guests, seemingly threw care to the wind, for their recklessness in traveling at such an extremely excessive rate of speed was a calmly, calculated, planned, daring venture and certainly his guests were accessories in this planned undertaking that brought about the ultimate and inevitable result that one could reasonably expect. We are of the opinion the sole proximate cause of this accident, which resulted in the untimely death of Gillespi, was the excessive speed at which Weeks was operating his automobile, making impossible the safe control thereof, with full knowledge and consent on the part of Gillespi.
Judgment affirmed.