## MARTIN v. NEW ORLEANS, T. & M. RY. CO.

### No. 1412.

Court of Appeal of Louisiana. First Circuit.
Jan. 21, 1935.

Dubuisson & Dubuisson, of Opelousas, for appellant.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellee.

MOUTON, Judge.

In April, 1933, Mrs. Martin, wife of petitioner, while driving an auto from Opelousas to Eunice, collided with a train of defendant company which resulted in personal injuries to Bernett Martin, minor son of plaintiff, and in the demolition of the auto.

Plaintiff instituted this suit for the recovery of damages for his son and for the value of the auto.

Judgment was rendered by the district judge rejecting the demand, from which plaintiff appeals.

The accident occurred in the town of Eunice, where the Evangeline Highway, running east and west, crosses the track of defendant company, running north and south.

Boudinot, engineer of defendant company, was backing four box cars from the south side of the Evangeline Highway over the crossing when the auto ran against the box cars, was demolished, and Bernett Martin was injured.

There was a brakeman and conductor on the lead or head box car which was being shoved by the engine towards the crossing.

When the brakeman or trainman on the lead or head car is approaching a crossing, his duty is to see that the way across is clear, and, when he finds it so, he gives a signal to proceed, which in this case was communicated by the brakeman to the engineer. When this signal was received by Boudinot, the engineer, the lead car was, says the engineer, near the south side of the concrete crossing. The train was moving at a rate of speed of about 2 miles an hour, according to the engineer, and about 3 miles an hour, according to Hogan, a disinterested witness.

After receiving the signal to proceed, the engineer accelerated the speed of the train to about 5 miles an hour, when it was struck by the auto on the crossing.

In his petition, plaintiff alleges that these box cars were backed "over the blind crossing of a much used paved highway within the corporate limits of the town of Eunice, at an excessive rate of speed without blowing the whistle or ringing the bell etc."; also avers that his wife heard no sound of an approaching train upon listening carefully, etc.

It is shown beyond question that the whistle was blowing and that the bell was ringing as the train approached the crossing, and it is so admitted by counsel for plaintiff.

The wife of plaintiff, driver of the auto, did not testify to support the allegation that she

did not hear any sound of an approaching train upon carefully listening for the warnings usually given before a train ventures over a railroad crossing.

It is also well established by the testimony of the engineer and Hogan, that the train was moving at about 3 miles an hour.

Glassburn, another witness for defendant, estimated the speed at 5 miles an hour, varying slightly from the other estimate and which shows the train was going at a slow speed.

Against this estimate of these three witnesses, we have the evidence of Octave Thomas who says the train was going between 18 and 25 miles an hour.

It is hard to believe that these box cars would have been backed at such a speed through the corporate limits of the town of Eunice over a paved highway.

Bernett Martin, minor son of plaintiff, says it was going between 15 and 20 miles an hour. It appears from the record that this witness did not hear, as he approached the crossing, either the sound of the whistle or the ringing of the bell. Glassburn heard the whistle and the bell, which were also heard by Hogan. Octave Thomas, witness for plaintiff, heard the ringing of the bell, but not the blowing of the whistle.

Pete Lee, witness for plaintiff, testifies he was inside a building when the accident happened; that he saw the box cars and heard the whistle blow.

■ In the case of Churchill v. Texas & Pac. Ry. Co., 151 La. 726, 92 So. 314, the court held that the guest not having charge of the operation of an auto is not required to keep a lookout for danger, but can rely on the driver for the discharge of that duty.

In the case of Delaune v. Breaux, 18 La. App. 609, 135 So. 253, we held that the guest could reasonably rely on the driver of the car who should look out for sudden or unexpected dangers along the roadway.

In Delaune v. Breaux, 174 La. page 43, 139 So. 753, the Supreme Court gave its approval to the ruling by this court in Delaune v. Breaux.

Evidently, Bernett Martin, then in his fifteenth year, was relying on his stepmother, Mrs. Martin, for the proper management or operation of the auto. He must have been paying slight attention to what was going on at that time, else he could not have failed to hear the blasts of the whistle and the ringing of the bell of that train, which were heard not only by defendant's witnesses, but also by witnesses for plaintiff, including Pete Lee who heard the whistle from the inside of a building where he was at that time. If Bernett Martin was so listless as to what was going on to the extent of not hearing the sounding of the whistle and the ringing of that bell, is it fair to believe that any reliance can be placed on his estimate of the speed at which this train was moving to the extent of accepting what he says on that subject, as against the statement of the engineer who was in charge of its operation, supported as it is by the evidence of Hogan and Glassburn?

■ As we read the record the preponderance of the evidence shows clearly that these box cars were going at about 3 miles an hour when the lead car reached the edge of the crossing, when upon signals given him by the brakeman the engineer accelerated his speed to about 5 miles an hour as he proceeded over the crossing. He was given a signal to stop before he got across, applied his brakes, but unavoidably collided with the auto driven by Mrs. Martin.

The evidence given by Bernett Martin shows that Mrs. Martin, also another lady, Mrs. Quirk, and three babies, besides himself were sitting on the same seat in the auto. Mrs. Martin was driving, Mrs. Quirk was sitting in the middle with two of her babies, and Bernett was on the outside, with one of the babies on his knees. The babies, he says, were fussing at the time. Placed in such a situation, it is not astonishing that he did not hear the blasts of the whistle or the ringing of the bell; and, with no duty devolving upon him to be looking ahead, as the driver of the auto, could he have been expected to observe at what speed he was moving, or at what speed the train was coming towards the crossing, or at what rapidity it was moving over the crossing? If he really made an estimate of the speed of that train, it could not have been with any degree of certainty or accuracy and cannot be accepted as equal to or much less as outweighing the estimate of its speed made by the witnesses for defendant company to whom we have hereinabove referred.

Mrs. Martin, driver of the auto, who, feeling the responsibility of her position, could have been expected to have been carefully looking ahead for emergencies, did not testify in the case, nor did her companion, Mrs. Quirk. These two ladies might have clarified the situation had they testified. No testimony was given by them, and for proof of negligence on the part of defendant company we are left almost entirely to the testimony of this 15 year old boy, a guest of his stepmoth-

er at the time of this accident. His evidence is altogether insufficient, as also is the testimony of the other witnesses of the plaintiff, to show that defendant company was at fault in the operation of its train when this collision occurred.

This accident happened in the early afternoon about 2 o'clock on a fair day, and not at a blind crossing, as plaintiff would have it. The train was being operated with care, and was going at a slow rate of speed when it came to the crossing, and had come almost to a stop, as testified to by some of the witnesses; and upon receiving the usual signal the engineer accelerated his speed to about the slow rate of 5 miles an hour, when, upon another signal to stop, the brakes were immediately applied, but without avail, and the collision occurred. There was no negligence whatsoever on the part of defendant company.

■ Mrs. Martin, driver of the auto, was negligent in failing to see these box cars as they came to the crossing and in proceeding to go across, as she had the time to stop the auto before it reached the railroad track or to swerve safely to her right before colliding with the train. She was clearly at fault and not the defendant company, which cannot be held in damages for the benefit of Bernett Martin, minor son of the plaintiff, as the guest of his stepmother, Mrs. Martin.

Counsel for plaintiff refer to many decisions where collisions occurred with autos while going over railroad crossings. In most of the decisions referred to, the collisions happened at night and were due to the careless operation of the trains or the failure to have bright lights, flagmen at the crossing, or lanterns to warn travelers on the streets of cities or highways.

The fact and circumstances upon which the rulings of our courts were based in those cases are so different from those appearing in the instant case, that it is sufficient to say, that as we understand these authorities, the doctrine announced therein does not apply.

Counsel for plaintiff refer to the case of Pearce v. Missouri Pac. R. Co., 143 So. 547, 548, in which Judge Le Blanc was the organ of this court. In that case, the collision occurred on a "misty night," as appears from the syllabus. How different here where it happened in broad daylight, in fair weather, when the train could have been seen in ample time to have allowed the driver of the auto to stop or to have deviated her course, so as to have prevented the accident. In that very case, Judge Le Blanc said that an autoist, before venturing over a crossing, should observe the familiar rule "To Stop, Look and Listen." If Mrs. Martin had observed that rule before driving over the crossing, no collision would have occurred in this case.

It is not shown that the traffic going on at the crossing in question or the conditions existing there at the time required the defendant company to have a flagman stationed at that point for the protection of the traveling public. The precautionary measures which were taken by the defendant company, to which we have fully referred, were sufficient.

■ There is also no ground for the application of the doctrine of the last clear chance in favor of plaintiff, as it clearly appears that upon discovering the danger in which the auto was placed the engineer did all in his power to stop his train in time to avoid the collision, but without avail. See Roder v. Legendre, 147 La. 295, 84 So. 787.

As defendant company was free of fault or negligence, it is not liable in damages for the injuries suffered by Bernett Martin.

■ It is claimed by plaintiff that defendant company is liable to him for the value of his auto, which was demolished by the collision. This claim is grounded on the contention that Mrs. Martin was not driving the auto as his agent when the accident happened.

If the defendant company had been at fault at the time, it would be liable in damages for the demolition of the auto, under the provisions of article 2315, Civil Code, which says that "every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it." To authorize recovery against a party causing damage he must have been at fault; otherwise he cannot be held liable.

In this case, as the defendant company was neither negligent or at fault, plaintiff cannot recover against it, whether his wife was driving on her own mission, as his agent, or without his authority.

The demands of plaintiff were properly rejected by the district judge.

Judgment affirmed.