Alleging damages to himself totaling $18,500.00 as a result of injury received while he was a passenger in a 1937 Dodge pick-up truck which was involved in a collision on December 4, 1945, with a large gasoline tank truck, plaintiff filed this suit against the owners of the tank truck and their insurer, to the extent of its public liability coverage. In the alternative, and in the event the tank truck driver was found free of negligence, the petition asked for judgment against the liability insurer of the Dodge truck, to the extent of its policy coverage.
The petition charged the driver of the gasoline truck with negligence in that he was driving at a reckless and unlawful speed; in that he was driving without lights at a time when lights were required and in that he failed to keep a proper lookout for vehicles ahead. In the alternative paragraphs, the petition charged that Mrs. Rambin, driver of the Dodge truck, was negligent in that she drove the truck across the paved Highway 20 without looking and listening for approaching vehicles. *Page 546 
An exception of no cause or right of action was referred to the merits of the case.
The owners of the gasoline truck unit and their insurer answered, denying liability, and setting forth that the driver gave sufficient warning of his approach to the intersection where the collision occurred by the blowing of the horn and switching off and on of the headlights and that the driver noted that the Dodge truck (in which plaintiff was a passenger) came to a stop, thus indicating that it would yield the right-of-way, and that the sole cause of the accident was the action of the driver of this Dodge truck in starting forward and attempting to cross the highway in the immediate path of the oncoming gasoline truck. In the alternative, and in the event their driver should be held negligent, these defendants pleaded that the plaintiff was guilty of contributory negligence in failing to maintain a proper lookout and warn the Dodge truck driver of the approaching vehicle.
The liability insurer of the Dodge truck answered, admitting the allegations of plaintiff's petition which set forth the occurrence of the collision and the negligence of the driver ofthe gasoline truck, but denied that the driver of the Dodge truck was in any way negligent. In the alternative, and in the event the Dodge truck driver was held negligent, this defendant pleaded that the plaintiff was guilty of contributory negligence in that, being seated on the right hand side of the pick-up truck, he was in a more favorable position to see the approaching truck and should have given warning to the driver in time to protect her from entering the crossing.
The District Court gave judgment against all defendants in which plaintiff was allowed damages totaling $4900.00. From this judgment all defendants and the plaintiff have appealed.
Louisiana State Highway #20 is a paved route leading south from Shreveport, Louisiana and passing through the unincorporated village of Gahagan on the west side of Red River in Red River Parish. U.S. Highway #84 is a graveled road entering State Highway #20 at a "T" intersection at a point opposite a store building (on the east side of Highway 20) in this village. Thus, Highway 84 runs into but does not cross Highway 20 at this point. On December 4, 1945, plaintiff, who was returning from Shreveport, Louisiana, alighted from a southbound bus at approximately 5:20 p.m.; went into the store on the east side of the highway at Gahagan and awaited the arrival of a neighbor, Mr. Rambin, with whom he had arranged to be driven to his home on U.S. Highway #84 some distance west of Gahagan. When his neighbor's truck arrived, it was driven by Mrs. Rambin, due to her husband's illness. Plaintiff got into this Dodge pick-up truck which had been parked by its driver, Mrs. Rambin, in a rather wide graveled area which lay between the store building and the eastern edge of Highway 20. When Mrs. Rambin finished some purchases in the store, she returned to the truck and drove same slowly westward until its front wheels were within five or six feet of the eastern edge of the pavement, where she stopped. Her lights were burning, and after looking northward and southward and observing no approaching vehicles, she proceeded to cross the pavement. The truck had cleared the east half of the pavement, and two feet of the west side, when its right rear body and fender were struck by the right front of a thirty-eight ton gasoline carrying truck unit which was proceeding south on Highway 20 at a speed of forty to fifty miles per hour. The pick-up truck was pushed southward and turned completely around. The gasoline truck continued southward, leaving the highway eastward and stopped in a field some 180 feet from the point of impact. Both occupants of the pick-up truck were severely hurt. The driver of the gasoline truck suffered no injury.
A state highway patrolman who arrived at the scene some thirty minutes after the collision and before either vehicle had been moved, testified that the glass on the highway and other signs indicated that the right rear of the pick-up truck was struck by the right front of the gasoline truck unit when the rear of the truck had proceeded to a point approximately two feet *Page 547 
west of the center line of Highway 20. He further testified that the driver of the gasoline truck stated that he did not see the pick-up truck until too late to avoid the collision. This patrolman, basing his opinion on the distance which the gasoline truck traveled after the impact and the type of ground and obstacles in its path, was of the opinion that the truck was going more than forty miles per hour when the crash occurred.
According to the U.S. Weather Bureau certificate in the record, sunset on the date of the accident occurred at 5:08 p.m. and there was a twilight period on that date of twenty-seven minutes. Plaintiff and the driver of the Dodge pick-up testified that this truck's parking lights were on at the time Mrs. Rambin drove up to the store and that she turned on her regular driving lights when she got into the car for the purpose of crossing Highway 20 and driving to their respective homes on Highway 84. The driver of the gasoline truck testified that it was dark enough, as he approached the intersection, for him to have his clearance lights on but not dark enough to require the driving lights. The driver of the pick-up truck testified that while it wasn't "exactly black dark," it was dark enough "to have lights on." This condition was further described by Mrs. Rambin as "dusky dark." The accident occurred at a time when twilight was changing into darkness, and the failure of both drivers to timely observe each other is traceable to a considerable degree to this condition of semi-darkness.
It is difficult to reconcile the testimony of plaintiff, the driver of the pick-up truck, and the driver of the gasoline truck unit, who testified that he, upon approaching the intersection, sounded his horn and, upon observing the pick-up truck approach the highway and stop short of entering it, he flicked his lights off and on and then proceeded through the intersection on the assumption that his right-of-way had been recognized by the driver as indicated by her stopping action. Mrs. Rambin, who was twenty years of age and accustomed to driving, testified that she looked carefully up the road in the direction from which the truck came; that she saw no lights, heard no horn and observed no approaching vehicle. Plaintiff, who is an elderly man, lost one eye about 1910 while in the service of the United States Navy, had, prior to the injury, become almost blind in the other eye. He testified that he looked north up the highway and that all he saw were lights in some houses by the side of the road; that he did not see the approaching truck or hear any warning; that his first knowledge of impeding peril was when "the world exploded" as the pick-up was crossing the west half of the highway.
We conclude, as did the District Court, that the drivers of both vehicles were negligent. Highway 20 was straight for a distance of a mile or more north of the Gahagan intersection. The view of neither driver was obstructed as to the other vehicle, and had either driver exercised the care which the condition of semi-darkness and the crossing of the intersection demanded of a prudent driver, the accident would not have occurred. Mrs. Rambin was negligent in proceeding into the intersection at a time when the large trucking unit with its clearance lights — though unnoticed — was nevertheless visible on the highway. The driver of the gasoline truck was negligent in approaching an intersection and an unincorporated village at a rate well over the speed limit designated by § 3, Rule 4(c) of Title II of Act 286 of 1938 for the operation of such vehicles through any town or unincorporated village of the State, and further in failing to see the pick-up truck as it came into his path and crossed more than half the paved portion of the road. Had he seen the truck even a second earlier, he could have slackened speed or turned soon enough to avoid the accident. The correctness of this conclusion is indicated by his testimony in the record: "If I had been a half second later and she had been a half second early, there would have been no collision."
Under the facts and circumstances shown by the record, plaintiff is not chargeable with contributory negligence. He was a guest in the pick-up truck with no right to control the operator. He *Page 548 
had been totally blind in one eye for many years and his vision in the other eye was seriously limited. He had his glasses in Court and the District Judge, when asked to comment on the type of lens, stated substantially that they were the thickest glasses he had ever seen. Mrs. Rambin was an experienced and apparently careful driver, and he, as a guest in contemplation of law, is not liable for her negligence unless the facts and circumstances are such that he saw or should have seen the approaching danger in time to give her warning. The circumstances under which a guest may be held guilty of contributory negligence are set forth in the case of Lorance v. Smith et al., 173 La. 883, 138 So. 871, 877. The rule is too well recognized to require extensive citation, but we quote two sentences from the above cited opinion, the last of which is applicable to the plaintiff here whose defect of eyesight is such as to make him relatively invulnerable as to the charge of failure to observe the approach of the southbound truck: "If it be found in a given case that the guest was aware of the negligence which he should reasonably apprehend might result in his injury, or if by the exercise of due care he should have been aware of such negligence, and if he occupied such a position in the car as would enable him to communicate with the driver, and if sufficient time elapsed after discovering the negligence to enable him to make complaint and he failed to do so, or failed to take any steps whatever, after becoming aware of the negligence, to protect himself, then it may be said that he acquiesced in the negligence of his host and cannot recover. Under this rule, the opportunity of the guest for discovering the negligence, his position in the car, his age, his mental development and physical condition, and his knowledge of what might constitute negligence or a dangerous situation or condition must all be taken into consideration in determining the question of assent or acquiescence."
Plaintiff's injuries were serious and severe. He remained in the hospital for approximately six weeks, wore a special neck brace, which immobilized his head and neck movements, for approximately six months, and at the time of the trial (three years and two days after the accident), was still suffering considerable pain and discomfort. The award of $4900.00 by the trial court was appropriate in view of the injuries and the attendant medical expenses, suffering and disability as shown by the record.
The judgment is affirmed, with costs.