109 So.2d 289 (1959)
Dorothy R. FERGUSON, Natural Tutrix of the Minor, Frank Ferguson,
v.
HIGHWAY INSURANCE UNDERWRITERS et al.
L. L. ROSHONG and L. L. Roshong, Administrator for the Minor, Loman Roshong,
v.
CANAL INSURANCE CO. et al.
Nos. 4719-4720.
Court of Appeal of Louisiana, First Circuit.
January 26, 1959.
Rehearing Denied March 9, 1959.
*291 Lawes, Cavanaugh, Hickman & Brame, Meredith T. Holt, Lake Charles, for Hwy. Ins. Underwriters.
Gravel, Humphreys, Sheffield & Mansour, Alexandria, for Canal Ins. Co.
Jess Funderburk, Jr., Leesville, for appellee.
Before ELLIS, LOTTINGER, and FRUGE, JJ.
ELLIS, Judge.
These two cases involve an appeal from a judgment in favor of two minor guest passengers against a father of the minor driving the car in which they were riding and his insurer, and against the owner and operator and his insurer, as a result of a collision between two motor vehicles on April 9, 1956.
It is agreed that the facts as found by the lower court are substantially correct, and we find them to be so, but appellants disagree with the conclusions of the lower court based upon its finding of fact. It will be pointless for this court not to adopt the statement of fact as contained in the lower court's reasons, although it will be necessary that we enlarge upon the facts in discussing appellants' contention that the lower court erred in its conclusions, based upon such facts. We therefore take the liberty of adopting the following quoted part of the lower court's written reasons for judgment:
"These two cases are damage suits arising out of a motor vehicle collision which occurred in the town of Leesville, Vernon Parish, Louisiana, on April 9, 1956. Suit bearing number 16,666 was instituted by Mrs. Dorothy R. Ferguson, as natural tutrix for her minor son Frank Ferguson, and suit number 16,667 was instituted by L. L. Roshong as administrator for his minor son Loman Roshong. The defendants in both cases are Canal Insurance Company, Highway Insurance Underwriters, Eddie Myers, Abner O. Cantrell and Dixie Red Top Cab Company, which company is alleged to be partnership.
"After issue was joined the two suits were consolidated for trial and in due course the trial was completed. The cases are now before the Court for decision on their merits.
"The evidence establishes that a motor vehicle collision occurred about midnight on April 9, 1956, between a Studebaker automobile *292 owned by defendant, Abner O. Cantrell, and a Plymouth automobile owned by defendant, Eddie Myers (Also known as Kenard Myers) who was the owner and operator of a taxi business known as Red Top Cab Company. At the time of the accident the Cantrell automobile was being driven by Richard O. Cantrell, minor son of the owner, and in addition to the driver it was occupied by Frank Ferguson and Loman Roshong, both of whom were seated on the rear seat of the car, and by Dale Jeter, who was sitting just to the right of the driver on the front seat. Richard O. Cantrell was 18 years of age and the ages of the other occupants of that car ranged from 17 to 20 years. The Myers vehicle was being driven at that time by its owner, Eddie Myers, and there were no other occupants of the car at that time.
"Defendant Cantrell was insured against public liability by Highway Insurance Underwriters, with bodily injury limits of $5,000 to one person and $10,000 to all persons arising out of one accident. Defendant Myers was insured by Canal Insurance Company, with bodily injury limits of $5,000 to one person and $10,000 to all persons. Dixie Red Top Cab Company (Or Red Top Cab Company) is not a partnership, as alleged, but is simply the trade name under which defendant Myers operates his taxi business.
"The accident occurred on U.S. Highway 171 within the corporate limits of the Town of Leesville. The highway at that point is a heavily traveled paved thoroughfare, running north and south, the concrete portion of the highway being 24 feet in width, with wide shoulders on either side of the slab. The road is straight and there was nothing to obstruct the vision of a driver for several hundred yards in either direction from the point of impact. An ordinance of the town of Leesville, fixes the speed limit along the highway at that point at 30 miles per hour. At the time of the accident the night was dark, the weather was cloudy and misty and the highway was wet.
"Just prior to the time the collision occurred young Cantrell, with his three passengers, drove out of the parking area of the Pines Barbeque Stand, which is located about three miles south of the corporate limits of the town of Leesville, and began traveling in a northerly direction along U.S. Highway 171 toward Leesville. The driver rapidly increased the speed of that car until it reached a speed of approximately 75 or 80 miles per hour. Shortly after the car reached this speed Ferguson and Roshong, who were in the back seat, entered into a conversation with each other in which they both indicated that they did not like to ride in an automobile being driven at a high rate of speed. They purposely talked loud in order that their conversation could be overheard by the driver, and both occupants of the front seat of the car confirm that they heard what was said. Cantrell testified that he understood from this conversation that Ferguson and Roshong wanted him to slow down. Approximately one miles before they reached the corporate limits of Leesville, Jeter, who was on the front seat asked the driver to slow down, and immediately thereafter the speed of the car was reduced to a speed of between 50 and 60 miles per hour.
"Shortly after entering the city limits of Leesville, all of the occupants of the Cantrell car observed the Myers vehicle about 200 or 300 feet ahead of them in the process of making a U-turn in the highway, driving at a speed of between five and ten miles per hour. Upon seeing the Myers car start across the highway in front of them Jeter shouted a warning to Cantrell, who immediately applied his brakes but was unable to avoid the collision which followed. The tires of the Cantrell car skidded along the paved highway a distance of at least 210 feet to the point where the collision occurred.
*293 "The evidence establishes that the Cantrell car was being driven at a speed in excess of 50 miles per hour at the time the occupants first observed the Myers vehicle starting to cross the highway. The skid marks show that all four wheels of the Cantrell car remained on the paved portion of the highway from the time the brakes were first applied until the collision occurred, and the point of impact was in the east line of traffic. The right front wheel of the Myers car struck the left rear door of the Cantrell car, causing damages to both vehicles and injuries to Ferguson and Roshong.
"Under these facts plaintiffs contend that the drivers of both vehicles were negligent, and that all of the defendants are liable in solido for the damages sustained by plaintiffs. Defendant Cantrell and his insurer contend that the drivers of both vehicles were negligent, but contend that Ferguson and Roshong were contributorily negligent and thus are barred from recovering. Defendant Myers and his insurer contend that Myers was without fault, that the sole proximate cause of the accident was the negligence of Cantrell, and that plaintiffs were contributorily negligent."
From the above and foregoing facts the lower court as to the negligence of Myers and the driver of the Cantrell car concluded:
"The evidence convinces me that Myers was negligent in endeavoring to make a U-turn on, or to cross, this heavily traveled public highway in the path of oncoming traffic without maintaining a proper lookout for approaching vehicles and without regard for the safety of others. If he had maintained a proper lookout he could and would have seen the Cantrell car approaching, and the accident could have been avoided. If he actually did see the Cantrell car approaching before he endeavored to cross the highway, and he indicates in his testimony that he did, then of course he was grossly negligent in proceeding to cross in front of this approaching vehicle. His negligence was a proximate cause of the accident.
"The driver of the Cantrell car also was negligent in driving at an excessive rate of speed and in failing to maintain proper control of the car immediately prior to the time the accident occurred. He obviously would have been able to stop or to have avoided a collision if he had maintained a more reasonable rate of speed. His negligence, therefore, is also a proximate cause of the accident."
There is no question or doubt as to the negligence of young Cantrell. Counsel for Myers by way of argument and in brief contends that he was not guilty of any negligence because "at the time that he turned onto the street he acted as any reasonable, prudent person would have done under the same circumstances. At the time he ventured out into the street he believed, and was justified in so believing, that he could get into the street and proceed on his way without in any wise interfering with the oncoming Cantrell car." In support of the quoted statement counsel for Myers continues in his brief as follows:
"The Cantrell car made skid marks of 78 paces. Lieutenant Manasco stepped off these paces and he further testified that one of his paces would be 34 inches. Computing this into feet means that the Cantrell vehicle skidded a distance of 221 feet before the collision occurred. We would like to point out here that the vehicle did not come to a stop as result of the braking power, but came to stop as result of the accident. Had not the accident occurred the skid would have been considerable more than it was. Further, taking into consideration the reaction time of the driver, the distance at which he noticed Eddie Myers pulling out in to the street would have been at least 309 feet. If the vehicle was traveling at 60 miles an hour, which was testified to by all the parties in the vehicle, then it was traveling at a speed of 88 feet per second. The average reaction time of an automobile driver under similar circumstances *294 is at least one minute and therefore he traveled 88 feet before he began to apply his brakes. This distance coupled with the 221 feet of skid marks gives a total of 309 feet. Actually, we believe that the vehicle was traveling in excess of 60 miles per hour, because the driver of the MP vehicle testified that after he attained his speed in trying to overtake the Cantrell vehicle he never drove less than 75 miles per hour. In spite of the fact that he was traveling 75 miles per hour, the Cantrell vehicle continued to gain on him. Traveling at 75 miles per hour, the Cantrell vehicle would be travelling 110 feet per second. If his speed was 75 miles per hour, then he was at least a distance of 331 feet at the time that he first saw the Eddie Myers vehicle. If he was traveling at 80 miles per hour, which in all probability he was, then he was traveling at the rate of 125 feet per second and was 346 feet from the Eddie Myers vehicle when he first noticed it. As a matter of fact, young Cantrell testified that after he attained his speed he was doing 75 to 80 miles per hour and maybe more. Eddie Myers testified that at the time that he turned back into the street the Cantrell vehicle was about four or five blocks down the highway. He testified that had this vehicle been going 30 miles per hour, which is the legal speed limit, he would have had sufficient time within which to get into the roadway.
"His testimony to this effect is borne out by the physical evidence. If the Cantrell vehicle was traveling at 30 miles per hour and was 309 feet away from the Eddie Myers vehicle at the time, that Myers started out into the highway, then Eddie Myers would have had sufficient time to negotiate his turn, get back into the roadway and attain his speed and would not have interfered with the Cantrell vehicle at all. We would like to point out here that Eddie Myers looked down the road to make sure that it was clear before he proceeded out into the highway and that the distances that we are using are the distances that the Cantrell vehicle was at the time that it first noticed Eddie Myers pulling out into the roadway, therefore, the Cantrell vehicle was considerably further back at the time that the roadway was checked by Mr. Myers. At the speed of 30 miles per hour a vehicle travels 44 feet per second. If the Cantrell vehicle was 309 feet from the Eddie Myers vehicle at the time its driver first noticed Eddie Myers' vehicle, then it would have taken 7 seconds for him to cover a distance of 308 feet. It was testified to by all parties that Eddie Myers was driving at a speed of 5 to 10 miles per hour. If he were driving at 5 miles per hour in this 7 second period of time he would have traveled 51 feet. Assuming that he had to go 10 feet across the highway and then turn into the highway he would have been 41 feet beyond the point of the impact at the time that the Cantrell vehicle arrived where the impact occurred. There can be no question but that the accident would not have occurred. These calculations are made on the assumption that the Eddie Myers vehicle would have continued at the speed of five miles per hour. Of course, this is not realistic, because the Eddie Myers vehicle would have gained speed and within a period of three or four seconds would have, in all probability, attained his speed of 30 miles per hour and would have been a considerable distance ahead of the Cantrell vehicle. If Eddie Myers was traveling at 10 miles per hour his vehicle was going 15 feet per second and in a time of 7 seconds would have been 105 feet beyond the point of the impact at the time the Cantrell vehicle arrived at the point of the impact."
We do not disagree with counsel's mathematics but believe that the conclusion which he reached, and which everyone using the same figures (Speed and feet) must also have reached, is a conclusive proof of the error of the facts upon which his figures are based when examined in the light of the established fact that Myers only traveled fourteen to sixteen feet diagonally across the highway in a northeasterly direction from the point *295 where he entered upon the paved portion of the west or south bound lane of traffic to the point of impact. There is no doubt but that the Cantrell car was possibly three to four hundred feet from the point of impact at the time that Myers swung out of the west bound lane to the west on his U turn in order to proceed across the highway and back into the east or northbound lane. We believe that this is the time that he looked and saw the car approaching quite a distance away. There is no testimony, and we do not believe from the proven facts that Myers ever looked to the south again until, as he stated, he saw the car "right at me * * * and I heard the brakes and he either had to run over the back of me or either go one way or the other, and there was a vehicle facing south, so he couldn't go around on the left side like he shoulda, so he tried to take the right * * *.". By way of explanation it was Myers' contention throughout the testimony and on his discovery deposition that he had successfully crossed the south bound traffic lane on the west side of the highway and had gotten into the traffic lane on the east side of the highway and was proceeding north at the time the Cantrell car swerved around to his right and struck him. This is absolutely impossible under all the testimony and the physical facts. Myers had just gotten the front end of the right front portion of his car across the center line two to four feet when he was struck on the right front fender and did not even break the light. The blow was to the rear of the light by the left front part of the Cantrell automobile. We are also convinced from the record that Myers was traveling not less than ten miles an hour in his attempt to cross the highway, for he repeatedly testified that there was a south bound car approaching from the north and that in reality his attention was focused on this car. He thought that he was going to be struck by the south bound car and as a matter of fact it passed to the rear of the Myers automobile which was mostly at the time in the south bound traffic lane, just an instant prior to the collision with the Cantrell car. From all the testimony we are firm in our opinion that Myers never looked to the south in the direction of the approaching Cantrell automobile other than when he swung off the highway in order to make his U turn. In other words, he never looked when he should have looked, that is, just as he prepared to enter the paved portion of the highway, in order to cross to the north bound lane. The decisive fact to be determined is the location of the approaching Cantrell car at the moment Myers car entered upon the paved portion of the highway in order to cross, for it was at this time that he should have looked and determined whether he could safely cross the highway in front of the approaching Cantrell car. At this time Myers was looking at the south bound car. As best we can determine from the record Myers travelled approximately sixteen feet from the western edge of the south bound traffic lane to the point of impact at a rate of 10 miles per hour which took him approximately one and 1/10 seconds. Therefore, if we should accept 60 miles per hour as the speed of the Cantrell automobile for 11/10 seconds it would place the latter car approximately 968/10 feet from the point of the impact at the time that Myers started across the highway. At that time the Cantrell automobile had already skidded approximately 123 feet and although we use the speed of 60 miles per hour for the Cantrell car, if it had been going at that speed prior to the application of the brakes it would have been making less than 60 miles per hour when 100 feet from the point of impact, and would therefore have been closer than 96.8 feet at the time Myers started across the highway. We are also fully cognizant of the fact that Cantrell's young friend who was riding on the front seat with him testified that he saw the Myers automobile when it was approximately 2 feet from the pavement just prior to its attempt to cross, and that he shouted a *296 warning to Cantrell who applied his brakes as soon as possible, which would have been approximately 221 feet from the scene of the impact. The distance of 2 feet was only an estimate and was evidently erroneous. There is no doubt that Myers was seen soon after his actions or movements indicated to Cantrell and his guest passenger on the front seat that he intended to cross in front of their car. Myers is charged under the law with seeing what he should have seen and had he looked at the proper time he would have seen the Cantrell car much too close for him to attempt to reenter and cross the paved highway, and it was also close enough for him to have estimated the speed and also to have known that at the moment its brakes were sliding the wheels. At the moment Myers should have been looking to his right or south for north bound traffic before attempting to cross the highway he was looking at the south bound car and evidently thought that he could safely beat it across the highway, and then realized after he had gone too far that he was about to be struck by the north bound car, all of which could have been avoided by Myers had he not been negligent in failing to look at the proper time and see the Cantrell car too close and coming at too fast a speed for him to attempt a crossing. For these reasons we are of the opinion that the lower court was correct in finding Myers guilty of negligence along with Cantrell which was a proximate cause of the collision and resulting injury to the plaintiffs.
This brings us to the plea of contributory negligence on the part of the plaintiff, which is the main defense of the defendant Canal Insurance Company, insurer of Eddie Myers, as well as a defense offered by the defendant Cantrell and his insurer, Highway Insurance Underwriters. Counsel for both stated that he adopts and is relying upon the able brief filed on behalf of Myers and Canal Insurance Company. Counsel frankly states in his brief that they do not disagree with the holdings in Lorance v. Smith, 173 La. 883, 138 So. 871; Delaune v. Breaux, 174 La. 43, 139 So. 753, 754; Jones v. Burke, La.App., 51 So.2d 322, which was cited by the lower court in its written reasons for judgment, but they do disagree with the application made by the lower court to the case at bar and particularly with its holding "that Ferguson and Roshong exercised ordinary care for their safety and took reasonable steps necessary for their protection." Counsel for defendants quote from Lorance v. Smith, supra, the general rule as stated in that case by the Supreme Court and again in Pipes v. Gallman, 173 La. 158, 136 So. 302 as well as the rules stated in the cases cited supra, and Stuart v. Gleason & McKenney, La.App., 42 So.2d 545, Scott v. Richard, La.App., 24 So.2d 175, Jones v. Burke, La.App., 51 So.2d 322, and Senegal v. Thompson, La.App., 91 So. 2d 865, 871. This rule as announced in all of these cases generally holds that when the guest permits the driver to be reckless without protesting he will be considered to have consented to and acquiesced in the driver's negligence if he had an opportunity to protest, and that such failure to protest on the part of the guest amounts to contributory negligence which will bar his recovery for injuries caused by the negligence of the driver, or as stated in the Senegal case, supra, by the trial judge of this case, Judge John T. Hood; "As a guest or passenger in an automobile, it was his duty to warn the driver of the danger, and otherwise exercise ordinary care to protect himself. His neglect to do so constituted a contributory or proximate cause of the accident. * * * It, of course, is the duty of a guest or passenger in a motor vehicle to exercise ordinary care for his own safety, and where reasonably necessary to warn the driver of impending danger and to take such other reasonable steps as are necessary for his own protection.'"
We cannot agree with counsel but do agree with the lower court's evaluation of the testimony as to contributory negligence and his conclusion that the plaintiffs were *297 not guilty of such negligence and we adopt his opinion in the respect and quote: that portion of it as follows:
"It is the duty of a guest or passenger in a motor vehicle to exercise ordinary care for his own safety, and where reasonably necessary to warn the driver of impending danger and to take such other reasonable steps as may be necessary for his protection. Lorance v. Smith, 173 La. 883, 138 So. 871; Delaune v. Breaux, 174 La. 43, 139 So. 753; Jones v. Burke [La. App.], 51 So.2d 322. In determining whether the guest or passenger has exercised reasonable care for his own safety, of course, all of the facts and circumstances must be considered. Lorance v. Smith, supra, Stuart v. Gleason & McKenney [La. App.], 42 So.2d 545; White v. State Farm Mutual Auto Insurance Company, 222 La. 994, 64 So.2d 245 [42 A.L.R.2d 338]; Herget v. Saucier, 223 La. 938, 67 So.2d 543; Vowell v. Manufacturers Casualty Insurance Company, 229 La. 798, 86 So.2d 909.
"In this case the Cantrell car traveled a distance of a little more than three miles from the Pines Barbeque Stand to the place where the accident occurred. At the speed it was being driven this distance must have been covered within a period of less than four minutes. During that short period of time Ferguson and Roshong both expressed to the driver their desire that he reduce the speed of the car. Although this information was conveyed to the driver indirectly, there is no question but that it was clearly understood by him. Also during that same brief period, Dale Jeter specifically asked Cantrell to slow down and in response to that request the speed of the car was materially reduced. Then, when the danger of a collision with the Myers car became apparent, Jeter shouted another warning to the driver.
"It appears to me that all three of the passengers in the Cantrell car in some manner informed the driver that they wanted him to slow down and warned him of the danger of driving at such an excessive rate of speed. Since Cantrell did actually reduce the speed of the car it must have appeared to all of his passengers that he was complying with their requests and that no further warning was necessary. After considering these facts, and the relatively short distance the parties traveled before the accident occurred, I conclude that Ferguson and Roshong did not acquiesce in the manner in which the Cantrell car was being driven, that they exercised ordinary and reasonable care for their own safety and that they adequately discharged their duty to warn the driver of the impending danger. Plaintiffs, therefore, were not contributorily negligent, and they are entitled to recover from defendants the damages which they sustained as a result of the accident."
We might add that the record shows that as a result of the conversation between the plaintiffs who were occupying the back seat as to the speed and their fear which they purposely made loud enough for the occupants of the front seat to hear it, was the reason that young Cantrell's guest passenger on the front seat specifically asked him to slow down and if the testimony of the occupants of the Cantrell car can be believed, which the District Court accepted, as to speed, Cantrell did reduce his speed to 60 miles per hour just prior to the collision. Of course, this was much too fast and in violation of the law but there was no reason to believe that had the plaintiffs remonstrated in any different manner that the results would have been different. In fact, young Cantrell himself frankly testified that he had learned better "now", meaning after this accident, but he doubted if he would have done any different if they had spoken directly to him. He frankly admitted that he heard the conversation which was a request by the plaintiffs to Cantrell to slow down, done in a manner which the plaintiffs thought might be most effective.
We are also of the opinion that the lower court's written reasons on the question of the injuries which the two plaintiffs suffered and the damages to be awarded is *298 correct, and we will again take the liberty of adopting his written reasons upon this phase of the case and we quote:
"The impact of the two vehicles caused Frank Ferguson to be thrown out of the Cantrell car to the ground, his body striking a post after it left the car. He was taken to Broyles Clinic in Leesville, and ten or twelve hours later he was transferred to Beauregard Memorial Baptist Hospital in DeRidder, where he remained for a period of 11 days, or until April 21, 1956, when he was discharged. Ferguson was treated by Dr. W. E. Reid, a physician and surgeon, from April 10 until September 7, 1956. On June 25, 1956, while being treated by Dr. Reid, he also was examined by Dr. Claude Pollard, Jr., a Neurosurgeon in Houston, Texas. After being discharged by Dr. Reid, Ferguson was examined again by Dr. Pollard, he was examined by another neurosurgeon, Dr. Joseph Martin Edelman, and by three orthopedic surgeons, Dr. Norman P. Morin, Dr. George P. Schneider, and Dr. Daniel M. Kingsley. The deposition of each of these experts is in the record, but no useful purpose would be served by a detailed discussion of their testimony.
"After reviewing all of the evidence I am convinced that as a result of this accident Frank Ferguson sustained bruises and contusions to the right shoulder, back, neck and both legs, with some injury to the soft tissue, muscles, tendons and ligaments of the cervical and lumbar regions. He undoubtedly suffered severe pain for a number of days immediately following the accident, and some pain and discomfort for several months thereafter. I am convinced, on the other hand, that he suffered no intravertebral disc injury, no fractures and no other injuries of a permanent nature. He, of course, was disabled from performing his duties as a service station attendant for some time after the accident occurred. The evidence convinced me that he was still suffering pain and was disabled from performing those duties when last examined by Dr. Pollard on September 24, 1956, but that he had fully recovered from his injuries and was no longer disabled by the time he was examined by Dr. Edelman and by Dr. Morin on November 7 and 8, 1956. In view of those circumstances I feel that an award of $3,000 is fair and adequate for the injuries which he sustained and for the pain and suffering which he endured. Because of his injuries it was impossible for him to perform his duties as a service station attendant from April 10 until November 7, 1956, or a period of approximately 30 weeks. Since he was earning $45 per week at the time of his injury he is entitled to recover the sum of $1,350, representing his loss of wages.
"Mrs. Dorothy R. Ferguson is entitled to recover the expenses which she incurred in connection with the treatment of her son's injuries. Defendants contend that she is not entitled to recover the fees which she paid to Dr. Pollard and to Drs. Burge, Windrow and MacIntyre because, they argue, this indebtedness was not incurred in connection with the treatment of her son's injuries. The evidence convinces me that the services rendered by these doctors constituted a part of the treatment administered to Frank Ferguson, and that Mrs. Ferguson is entitled to recover the amount which she was obligated to pay for these services. The evidence, however, does not support her claim for the expenses which she contends were incurred in making trips to and from Dr. Reid's office in DeRidder. In my opinion Mrs. Ferguson is entitled to recover from defendants the following items of indebtedness incurred by her: Broyles Clinic$24; Beauregard Memorial Baptist Hospital$191.15; Dr. W. E. Reid$320; Dr. Claude Pollard, Jr.$75; Drs. Burge, Windrow and MacIntyre$50; and Hixon Funeral Home $7.50; or a total of $672.65.
"Loman Roshong also was thrown out of the car at the time of the accident, falling to the ground on his right shoulder *299 and back. Immediately after the accident occurred he was taken to Broyles Clinic in Leesville, and ten or twelve hours later he was transferred to the Beauregard Memorial Baptist Hospital in DeRidder, where he was confined for a period of eleven days or until April 21, 1956. He was treated by Dr. W. E. Reid from the time he was first admitted to the hospital in DeRidder until September 7, 1956. Roshong also was examined and/or treated by all of the other doctors who examined and treated Frank Ferguson. The testimony of each of these experts is in the record.
"The injuries sustained by Roshong as a result of this accident are almost identical to those sustained by Ferguson. They consist of multiple bruises and contusions of the head, neck, back, right shoulder, arms and legs, with injury to the soft tissue, muscles and tendons of the cervical and lumbar regions of his back. Roshong also sustained a laceration and contusion of the right elbow, which apparently healed rapidly and without any residual effects. Dr. Reid concluded that he also sustained a fracture of the fifth cervical posterior spinous process. This finding was not confirmed by any of the other medical experts, however, so I conclude that if that type of injury was sustained it also healed rapidly and without any disabling effects. He suffered severe pain for a few days after the accident occurred and some pain and discomfort for several months thereafter. I am convinced that he did not sustain a herniated disc, a fracture or other injury of a permanent nature. The evidence convinces me that he continued to suffer pain from the date the accident occurred until he was examined by Dr. Edelman and by Dr. Morin on November 7 and 8, 1956. In my opinion an award of $3,000 for the injuries which he sustained and for the pain and suffering which he endured would be fair and adequate. Because of his injuries he was unable to resume his employment as a service station attendant from April 10 until November 7, 1956, or a period of approximately 30 weeks. He was earning $45 per week at the time the injuries were received and he, therefore, is entitled to recover the additional sum of $1,350 representing his loss of wages.
"Plaintiff L. L. Roshong, is entitled to recover the expense which he incurred in connection with the treatment of his minor son for the injuries received in this accident. The evidence convinces me that he is entitled to be reimbursed for the following items of indebtedness: Broyles Clinic$36; Hixson Funeral Home$7.50; Beauregard Memorial Baptist Hospital$239.40; Dr. W. E. Reid, $215.50; Dr. Claude Pollard, Jr.$75; Drs. Burge, Windrow and MacIntyre$45; or a total of $618.40.
"In Suit bearing Number 16,666, therefore, for the reasons herein assigned, judgment will be rendered in favor of plaintiff, Mrs. Dorothy R. Ferguson, as natural tutrix for her minor son, Frank Ferguson, and against defendants, Highway Insurance Underwriters, Canal Insurance Company, Eddie Myers and Abner O. Cantrell, in solido, for the sum of $4,350, with legal interest thereon from date of judicial demand until paid. Judgment further will be rendered in favor of plaintiff, Mrs. Dorothy R. Ferguson, and against all of said defendants, in solido, for the sum of $672.64, with legal interest thereon from date of judicial demand until paid, and for all costs of that suit.
"In suit bearing number 16,667, for the reasons herein assigned, judgment will be rendered in favor of L. L. Roshong, as administrator for his minor son Lonan Roshong, and against defendants, Highway Insurance Underwriters, Canal Insurance Company, Eddie Myers and Abner O. Cantrell, in solido, for the sum of $4,350, together with legal interest thereon from date of judicial demand until paid. Judgment further will be rendered in favor of said plaintiff, L. L. Roshong, and against all of the said defendants, in solido, for the sum of $618.40, with legal interest thereon from *300 date of judicial demand until paid and for all costs of that suit.
"The fees of each of the medical experts whose depositions were filed in evidence in this proceeding are hereby fixed at $75 one-half of each such fee to be charged to case bearing number 16,666 and the remaining one-half of said fee to be charged to case bearing number 16,667."
For the above and foregoing reasons the judgment of the district court is affirmed.