REID, Judge.
This suit for damages was brought by Pete Durham, individually and as Administrator of his minor son, Michael Durham, against Paul A. Paciera, Jr. and Marquette Casualty Company, his insurer,, for injuries and medical expenses sustained' by Michael Durham in an automobile accident resulting from a drag race and police chase, which occurred on January 24, 1962..
Plaintiff alleges the accident was caused solely through the negligence of Paul A. Paciera Jr., minor son of Paul A. Paciera, *189 who was living with his father at the time of the accident. The accident happened on Louisiana Highway 327, known as Gar-dere Lane, in the south portion of the Parish of East Baton Rouge.
Plaintiff was riding as a guest passenger in a Corvette owned by Paul A. Paciera Sr., who was permitting his son to have and use the automobile as his own, while he was attending Louisiana State University. Plaintiffs seek the sum of $10,000.00 for pain and suffering, and $614.65 for medical care.
Defendants answered plaintiff’s petition contending that young Durham had requested to ride in the Corvette when the vehicle was going to engage in a drag race with another automobile on Nicholson Drive, and set up special defenses, assumption of risk and contributory negligence, in bar of plaintiff’s right to recover.
After trial on the merits the Lower Court rendered judgment against the plaintiff in his action in behalf of the minor Michael Durham, but rendered judgment in favor of plaintiff, individually, for his claim for medical expenses in the amount of $614.00. Subsequent to the judgment it was stipulated Marquette Casualty Insurance Company had medical payment coverage on the Corvette, in the amount of $500.00 which, in fact, was paid to the plaintiff.
Plaintiff appeals from this judgment rejecting his demand in favor of his minor son, and defendant appeals from that portion of the judgment awarding medical expenses in the amount of $614.00.
As in most cases of this type the issue is mainly factual. There is no question Michael Durham, the son of Pete Durham, was returning to Louisiana State University where he was a student, and about midnight on January 24, 1962 stopped at Nicholson Bar and Lounge on Nicholson Drive in Baton Rouge, Louisiana, near the campus. By chance, he met Paciera, a fellow student and acquaintance at the Lounge, and upon learning Paciera was preparing to engage a Pontiac car driven by another student, Pat Chaney, in a drag race asked to accompany Paciera. A fourth student, Raymond Martinez, accompanied Chaney in the Pontiac.
They cruised side by side southward on Nicholson Drive until they were ready to start the race, and then one of the boys called the countdown and the drag race started. There is testimony in the record that young Durham himself called the count. The boys raced for about one-half or three-quarters of a mile when they slowed down. One of the boys, and there is a dispute about which one, shouted: “There comes the cops”, whereupon Paciera raced down Nicholson Drive. When he approached the intersection with Gardere Lane Durham called his attention to the fact there was another car ahead of them, and he cautioned him to slow down. Paciera reduced his speed to about 35 miles an hour and turned left into Gardere Lane where he again accelerated his speed. At that time, Durham stated he told Paciera that he was well ahead of the other car. During the race down Nicholson Drive the Paciera car was being driven at a speed of from 100' to 118 miles an hour. The police car following was traveling at 97 miles an hour, and according to the testimony of one of the police officers young Paciera told him, following the collision, that if they hadn’t wrecked they never would have caught him.
The Paciera car, while traveling Gardere Lane, approached a curve in the road, and at that time young Durham told Paciera to slow down for there was a car approaching around the curve. The Pacida car failed to-negotiate the curve, and as a result was. wrecked, and both boys were injured. The-police, subsequently, came to the wreck and called an ambulance and both boys were taken to the hospital. Young Paciera was. not seriously injured, but young Durham, sustained a fractured right wrist, ulva and radius, cervical sprain, generalized abrasions, contusions and lacerations.
Plaintiff contends Durham protested several times to Paciera about the speed, beg *190 ging him to slow down, and that he protested also when he asked him to slow down on approaching Gardere Lane when he saw the blue Chevrolet car ahead of him, and that he protested when he warned him of the curve where the accident happened. In addition, plaintiff urges that the proximate cause of the accident was the admitted speed of the Paciera car after the police started pursuing it, claiming the drag race was over, and that the remote cause of the accident was the drag race. All of the boys in the two cars testified in the case. There was some difference in their testimony, although there was no question they had agreed to participate in the drag race. Paciera testified, and Durham corroborated him, that he made the remark when the cars slowed down that they had gotten off to a bad start and they could continue the race. That was when Chaney and Martinez testified someone replied, “the cops are coming” and Paciera’s car took off.
Plowever, Officer Ducote of the City Police of Baton Rouge, testified he and Officer Baxley were parked at South Campus and Nicholson Drive on South Campus Street when they saw two cars line up preparing to engage in a drag race. These cars were about one-quarter of a mile to the right, or south, of the police car. As soon as he saw the two cars take off Officer Ducote followed them in the police car and turned his red light and siren on. He testified when the red light and siren came on the Pontiac pulled over to the shoulder of the road and the Corvette took off. They took the license number of the Pontiac and followed the Corvette at a rate of 97 miles an hour. He did not testify as to any alleged slowing down or stopping by the two cars to show that the drag race was over. Whether or not the vehicles slowed down and whether or not a conversation was conducted between the two cars, we fail to find sufficient protest by young Durham to warrant his recovery in this suit. In fact, consideration of his testimony by itself is sufficient to hold him guilty of contributory negligence and assumption of the risk. We quote the following excerpt from his testimony:
“Q: All right, now let’s back up. When you heard something said about the cops, what did you do or say, if anything?
“A: I didn’t say anything.
“Q: And he speeded up then, is that right ?
“A: He took off.
Now, what did you say, if anything, then? Ol
“A: At that time, I didn’t say ■ anything.
“Q: The first time that you said anything to Paul was when you saw this ’59 Chevrolet, as you were approaching Gardere Lane, isn’t that right? <0
That’s right. >
“Q: And what did you say to him? ¡O
I told him he should slow down, because we were coming up behind the car too fast. There wasn’t anything dangerous, really, about driving that fast on that highway, as long as no one was >
Q: Let me recall to you your testimony in your deposition, Page 13, Line 13: Question: ‘What was that again?’ Answer: ‘A 1959 Blue Chevrolet in front of us, on down towards the other end, that we were approaching. I got excited and nervous then, because I knew that we were approaching him at a pretty fast rate of speed, which when you compare maybe 55 or 60 with 118, you’re moving up on him, and I indicated to Paul then, you had better watch that car.’ Now, was that your testimony then, when you gave your deposition?
“A: Yes sir.
*191 “Q: In other words, that s all you said isn’t it, you better watch that car ? cO
“A: Yes sir, I suppose so. C
“Q: Now, that was the first time you had warned Paul about anything, wasn’t it, when you were going 118 miles an hour? O!
“A: Yes sir. >
“Q: Now before that time, you didn’t say a word to Paul about his speed or about obstructions or anything, is that right? ¡O
“A: There were no obstructions. c
“Q: But you didn’t say a word to him before then, did you? a
“A: About speed, no sir. <
“Q: Or about trying to elude the police? You didn’t say anything to him about that did you? a
“A: No sir. c
“Q: Now, he got around that car, didn’t he? a
“A: Which car? >
“Q: The car in front of you? <o
“A:The ’59 Chevrolet? >
“Q: Yes. o
“A:That car turned to the right, if I’m not mistaken, when it got to the left. >
“Q: Now, what’s the next time that you say that you cautioned Paul ? a
“A:After cautioning him about the curve ? <
“Q: Yes. iO
“A: Well, I told him as we were going up Gardere that he was well ahead of the other car. >
“Q: He was what? IO
“A: He was well ahead of the car behind us. >
1Q: Did you tell him to slow down ?
“A: Well, I sort of indicated in my tone of voice that it would be all right to slow down.
“Q: In other words, you kind of assumed that he would understand from your tone of voice that it would be good to slow down ?
“A: I would imagine so.
"Q: But now up until the time you started to drag, until the time of the accident, did you ever say to him, stop the car let me out? Did you ever ?
“A: No sir, I never said that. I figured it was useless.
“Q: You didn’t try to say anything, did you, about that?
“A: No sir.
“Q: Now, once you turned into Gar-dere Lane and before you saw the headlights of the car ahead of you, you didn’t protest the acceleration of the car, did you?
“A: No sir.”
Plaintiff cites numerous cases concerning the sufficiency of protest by a guest passenger to show that he did not acquiesce in the host driver’s negligence. See Ferguson v. Highway Insurance Underwriters, La.App., 109 So.2d 289; McAdd v. Shea, 10 La.App. 733, 122 So. 879; Redden v. Blythe, La.App., 12 So.2d 728; 61 C.J.S. Motor Vehicles § 486, p. 94.
He also cites Williams v. Pelican Creamery, La.App., 30 So.2d 574, authority for the principle that where a guest acquiesces in the remote cause, he did not acquiesce in the proximate cause. We have no quarrel with this line of jurisprudence, but we do not think the facts fit the instant case.
Plaintiff further contends that there is a difference in Durham’s assumption of risk and contributory negligence. We believe the law laid down in Ferguson v. Highway Insurance Underwriters, La.App., *192 109 So.2d 289 is in point on this contention. We quote the following pertinent part of this decision:
“This rule as announced in all of these cases generally holds that when the guest permits the driver to be reckless without protesting he will be considered to have consented to and acquiesced in the driver’s negligence if he had an opportunity to protest, and that such failure to protest on the part of the guest amounts to contributory negligence which will bar his recovery for injuries caused by the negligence of the driver, or as stated in the Senegal case, supra, [Senegal v. Thompson, La.App., 91 So.2d 865] by the trial judge of this case, Judge John T. Hood; ‘ “As a guest or passenger in an automobile, it was his duty to warn the driver of the danger, and otherwise exercise ordinary care to protect himself. His neglect to do so constituted a contributory or proximate cause of the accident. * * * It, of course, is the duty of a guest or passenger in a motor vehicle to exercise ordinary care for his own safety, and where reasonably necessary to warn the driver of impending danger and to take such other reasonable steps as are necessary for his own protection.” ’ ”
See also Bordelon v. Couvillion, La.App., 130 So.2d 453; Grayson v. Allstate Insurance Company, La.App., 141 So.2d 101; Stuart v. Gleason and McKenney, La.App., 42 So.2d 545; 61 C.J.S. Motor Vehicles § 486, p. 92.
We, therefore, concur in the Trial ■Court’s finding that young Durham assumed the risk to bar him from recovery herein, because he acquiesced in the drag race and the race with the police officers thereafter, and did not protest until just seconds before the accident happened, when he could see what was going to happen. In addition, •we hold that Mike Durham was guilty of •contributory negligence.
This brings us to the question of the medical expenses. The Trial Judge with written reasons for judgement awarded plaintiff, Pete Durham the amount of medical expenses, although he did state that after diligent search he was unable to find a case in point. He further held, if the Court should find that Mike Durham was guilty of contributory negligence, a recovery by the father for medical expenses would not be allowed. He further stated since there was no finding of negligence on the part of Michael Durham, and that the Court found that the accident was caused solely by the negligence of Paciera, he granted recovery to the plaintiff, Pete Durham, in the amount of $614.65 for medical expenses.
With this finding we believe the Trial Judge was in error. Our Courts have repeatedly held that a father will be denied recovery against his son’s alleged tort fea-sor where his son is contributorily negligent or assumes the risk. The case of Pancoast v. Cooperative Cab Company, La.App., 37 So.2d 452, holds as follows:
“We must, therefore, hold that since young Pancoast was guilty of negligence which contributed to the accident, this negligence prevents recovery by the father, plaintiff in the main demand.”
See also Epps v. Standard Supply and Hardware Company, La.App., 4 So.2d 790.
We, therefore, hold that the father, Pete Durham, is not entitled to recover for the medical expenses incurred as a result of the injuries received in the accident in which his son was guilty of contributory negligence.
We, therefore, reverse the judgment of the Lower Court in so far as it awards plaintiff recovery in the amount of $641.65 medical expenses, and in all other respects the judgement of the Lower Court is affirmed.
Reversed in part, affirmed in part.